861 A.2d 885

**Janice C. SCHROEDER and Theodore C. Schroeder, Her Husband, Appellants,**

**v.**

**Lynn JAQUISS, Executrix of the Estate of G. William Jaquiss, M.D., Deceased, and Donald B. Kamerer, M.D., Appellees.**

Supreme Court of Pennsylvania.

Resubmitted Sept. 27, 2004.

Decided Nov. 17, 2004.

Michael T. Collis, Esq., Pittsburgh, for Janice C. Schroeder and Theodore C. Schroeder, her husband.

Paula Ann Koczan, Esq., Pittsburgh, for Lynn Jaquiss.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

In this appeal, we consider whether the Superior Court correctly concluded that a decedent's representative did not waive the Dead Man's Act ("Dead Man's Act" or "Act"), 42 Pa.C.S. § 5930, by not raising the Act by objection at the discovery depositions of adverse parties. For the reasons that follow, we affirm the Superior Court's order.

The relevant facts are as follows. On or about April 8, 1996, Appellant Janice C. Schroeder ("Mrs. Schroeder") consulted with G. William Jaquiss, M.D. ("Dr. Jaquiss") about a growth in her left external ear canal. After excising the growth, Dr. Jaquiss recommended that Mrs. Schroeder undergo additional surgery. Donald B. Kamerer, M.D. ("Dr. Kamerer") seconded Dr. Jaquiss' opinion. Mrs. Schroeder accepted Dr. Jaquiss' recommendation and executed a form entitled "Consent to Surgery or Other Procedure" for a "Lateral parodectomy with

nerve dissection; Radical excision external auditory canal lesion; without neck dissection." Dr. Jaquiss performed a second operation on Mrs. Schroeder, assisted by Stephen Goldman, M.D. ("Dr. Goldman"). During the procedure, Mrs. Schoeder's left eardrum and the ossicles in her left middle ear were removed. After the procedure, Mrs. Schroeder experienced facial paralysis and a hearing loss in her left ear.

In March of 1998, Mrs. Schroeder and her husband, Appellant Theodore C. Schroeder, (collectively, the "Appellants"), commenced an action by writ of summons against Dr. Jaquiss, Dr. Kamerer, Dr. Goldman, and the University of Pittsburgh Medical Center.[1] On May 3, 1998, Dr. Jaquiss died. The Appellee, Lynn Jaquiss, the Executrix of the Estate of G. William Jaquiss, M.D. ("Estate"), was substituted for Dr. Jaquiss as a defendant.

Appellants filed an Amended Complaint in January of 1999, alleging a cause of action in negligence and a cause of action for lack of informed consent against each of the defendants. As against the Estate, Mrs. Schroeder asserted, *inter alia*, that Dr. Jaquiss failed to obtain her informed consent for the specific surgery he performed and failed to inform her that the risks of surgical intervention included facial paralysis and a hearing loss.[2] The Estate raised the Dead Man's Act in its Answer and New Matter. The Act provides that one whose interest is adverse to the interest of a decedent is not a competent witness to any matter which occurred before the decedent's death. 42 Pa.C.S. 5930.[3]

1. It was later determined that the proper hospital party was UPMC Presbyterian. The caption of the action was amended accordingly.

2. Mr. Schroeder asserted a claim for loss of consortium against each of the defendants. At some point in these proceedings, Mr. Schroeder voluntarily withdrew his claims.

3. The Dead Man's Act states in relevant part:

§ 5930. Surviving party as witness, in case of death, mental incapacity, etc.

Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead ... and his right thereto or therein has passed ... to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract,

Discovery ensued. Appellants deposed Drs. Kamerer and Goldman; Dr. Kamerer deposed Mrs. Schroeder. While the Estate received notice of these depositions, it did not attend them. Further, the Estate did not initiate or otherwise engage in any discovery.

The case proceeded to trial. On the first day, the trial court ruled that the Dead Man's Act applied to Appellants, Dr. Kamerer and Dr. Goldman, rendering them incompetent witnesses as to matters that took place before Dr. Jaquiss died.[4] On the second day of trial, however, Appellants made an oral motion *in limine* to permit testimony from these witnesses on such matters, asserting that the Estate waived the Act's protection by failing to raise it at their depositions.

The trial court agreed with Appellants' assertion, granted their motion *in limine,* and ruled that they and Drs. Kamerer and Goldman were competent to testify at trial as to any matter occurring before Dr. Jaquiss' death. The trial court stated:

The Dead Man's Rule is highly technical and easily waived. . . .

[T]he one place where [the Estate] did not expressly assert the Rule was during discovery depositions taken by other parties, at which [the Estate] chose not to appear. It would seem that the *Perlis* holding (re-stated with approval in *Anderson*) that "where a party is required to answer pretrial interrogatories, any objection based upon the Dead Man's rule to the competency of such party to testify at the trial is waived even though the answers to the interrogatories were not offered in evidence."

Given that position of the Pennsylvania Supreme Court, [the Estate's] failure to object at a deposition to any predeath matters inquired into also constitutes a waiver of the Dead Man's Rule. The fact that [the Estate] had announced

nor any other person whose interest shall be adverse to the said right of such deceased ... shall be a competent witness to any matter occurring before the death of said party. . . .

42   Pa.C.S. § 5930.

**4.** There is no dispute that the Act applies to these witnesses.

[its] assertion of the Rule in [its] New Matter does not change this. The Rule furnishes a continuously waivable protection that must be vigorously asserted on any occasion where waiver may occur. . . . [The Estate's] failure to appear at the deposition resulted in [its] not objecting to questions whose answers would violate the Dead Man's Rule. The protection of the Rule has therefore been waived and Plaintiffs and co-defendants may testify as to pre-death matters subject to any other evidentiary rules.

Trial Court's Opinion dated March 29, 2001 at 2–3.

Accordingly, at trial, Mrs. Schroeder recounted conversations that she had with Dr. Jaquiss concerning her treatment and testified that Dr. Jaquiss did not tell her that her left eardrum and the ossicles in her left middle ear would be removed or that her hearing would be affected.

The jury returned a verdict against the Estate in the amount of $1,000,000.[5] The Estate filed a motion for post-trial relief, alleging *inter alia,* that the trial court's ruling on waiver of the Act was reversible error and asking for a new trial. The trial court denied the Estate's motion, and upon Appellants' request, molded the verdict to include delay damages for Mrs. Schroeder. A judgment in favor of Mrs. Schroeder and against the Estate for $1,182,125 was entered. The Estate filed a timely appeal in the Superior Court.

On appeal, in an unpublished opinion, the Superior Court held that the trial court committed reversible error in finding the Act waived. Accordingly, the Superior Court vacated the judgment against the Estate and remanded for a new trial against the Estate alone.[6]

5. Before the jury's verdict was rendered, the Schroeders voluntarily withdrew their claims against Dr. Goldman and UPMC. The jury returned a verdict in Dr. Kamerer's favor.

6. Mrs. Schroeder also filed an appeal in the Superior Court, asserting that the trial court erred in connection with the case she tried against Dr. Kamerer. The Superior Court rejected these assertions and affirmed the judgment entered in Dr. Kamerer's favor. Mrs. Schroeder did not pursue this ruling further.

In doing so, the Superior Court noted that it has held that a decedent's representative waives the Act by taking an adverse party's deposition or by requesting his response to interrogatories. *See, e.g., Olson v. North American Ind. Supply, Inc.*, 441 Pa.Super. 598, 658 A.2d 358, 364–65 (1995). The court also pointed out that it has extended this holding to situations in which the discovery was not placed on the record or used as evidence. *See Perlis v. Kuhns*, 202 Pa.Super. 80, 195 A.2d 156 (1963). At the same time, however, the court observed that the Estate neither took discovery nor availed itself of the contents of the depositions taken.

Consulting the discovery rules for additional guidance, the court observed that Pa.R.C.P. 4016(b), which governs depositions, states that objections to competency are not waived by failure to make them during a deposition, unless the ground of the objection is one that was known and which might have been obviated if made at the time of the deposition.[7]

In light of Pa.R.C.P. 4016(b) and finding no controlling authority to the contrary, the Superior Court concluded that the trial court erred in determining that the Estate's failure to raise the Act during the depositions constituted a waiver of the Act's protection. Concluding further that this error controlled the outcome of the case, the Superior Court held that it was reversible error, which required the grant of a new trial. This court granted review:[8]

7. Rule 4016(b) states:

Rule 4016. Taking of Depositions. Objections

\* \* \*

(b) Objections to the competency of a witness or to the competency, relevancy, or materiality of the testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which was known to the objecting party and which might have been obviated or removed if made at that time.

Pa.R.C.P. 4016(b).

8. Generally, our standard of review of a trial court's evidentiary ruling is whether the trial court abused its discretion. *Zieber v. Bogert*, 565 Pa. 376, 773 A.2d 758, n. 3. (2001). As the evidentiary ruling at issue turns on a question of law, however, our review is plenary. *Id.*

We begin with the Dead Man's Act. Originally, the Act was an exception to the general rule of witness competency that was set forth in the Act of 1869, P.L. 30 and later, in the Act of May 23, 1887, P.L. 158. *See* former 28 P.S. § 322; George M. Henry, *Competency of Survivor or Person With an Adverse interest to Testify in Event of Death or Lunacy of the Other Party to a Transaction,* 5 U. PITT L. REV. 125 (1939).[9] Through the Act, the legislature sought to prevent the injustice that might flow from permitting a surviving, adverse party to give testimony that is favorable to himself and unfavorable to the decedent's interest, but which the decedent's representative is in no position to rebut. *In re Estate of Hall,* 517 Pa. 115, 535 A.2d 47, 53 (1987).

■ The Dead Man's Act itself does not address the circumstances by which a decedent's representative waives the statute's protection during the discovery process. The courts, however, have applied the doctrine of waiver to the Act in this context. *See, e.g., Perlis,* 195 A.2d at 156. The principle that presently controls was set forth in *Anderson v. Hughes,* 417 Pa. 87, 208 A.2d 789 (1965). It provides that when a decedent before he died or a decedents representative has required an adverse party to be deposed or to answer interrogatories, any objection based upon the Dead Man's Act to the competency of such a party to testify at the trial is waived, even though the discovery is not offered in evidence. *Anderson,* 208 A.2d at 791 (citing *Perlis,* 195 A.2d at 156 and *Rosche v. McCoy,* 397 Pa. 615, 156 A.2d 307 (1959)). At the time this rule arose, the courts apparently viewed the taking of discovery as the functional equivalent of trial testimony, and in developing the rule, sought to prevent the unfairness that they perceived would ensue if a decedent's representative could gain information from an adverse party through discovery and then repudiate the results, if what was learned proved to be unsatisfactory. *See Perlis,* 195 A.2d at 158–59.

9. Under the common law that existed in Pennsylvania prior to these Acts, parties were excluded from testifying in their own suits and witnesses were incompetent if it appeared that they had an interest in the controversy. *Id.* The general rule of witness competency reflected in the aforementioned Acts is presently in 42 Pa.C.S. § 5921.

■ Turning to the instant case, it is this principle that Appellants argue was violated when the Superior Court held against them, and when it looked to Pa.R.C.P. 4016(b) to reach its decision. According to Appellants, the Superior Court should have realized that because the Dead Man's Act is contrary to the general rule of witness competence, the Pennsylvania courts have limited the Act's application by determining that it is waived if not raised on every occasion in which adverse testimony is elicited. Thus, once the Estate failed to appear at the depositions of adverse parties and raise the Act, the Act was waived, and no inquiry should have been made under Pa.R.C.P 4016(b) to determine whether or not an objection under the statute was preserved for trial. Appellants further contend that even if the Estate did not waive the Act by not appearing at the depositions, Pa.R.C. P. 4016(b) is inapt because it only applies to objections to a witness' mental incapacity.

The Estate counters that it followed the only instruction that relevant cases give to a decedent's representative who seeks to avoid waiving the Act *i.e.*, it refrained from conducting discovery of incompetent witnesses. The Estate further asserts that caselaw does not require the courts, as Appellants argue, to limit routinely the Dead Man's Act's application through the waiver doctrine, and that the courts could not have intended, as Appellants suggest, to obligate a party, who simply chooses to benefit from the Act's protection, to bear the burden of objecting to every deposition question and every interrogatory that may fall within the Act's purview. Lastly, the Estate contends that under Pa.R.C.P. 4016(b), its Dead Man's Act objections did not have to be made at the depositions taken of Appellants, Dr. Kamerer, and Dr. Goldman.

We agree with the Estate. The common law principle that we have heretofore articulated on waiver of the Dead Man's Act in discovery is clear—a decedent's representative waives the Act by taking the deposition of or requiring answers to interrogatories from an adverse party, whether or not he places the results of such discovery on the record. *Anderson v. Hughes,* 208 A.2d at 791. Therefore, because the Estate

refrained from engaging in such discovery, the *Anderson* waiver principle was not implicated. Moreover, the principle that has been in place has not required a decedent's representative to present himself at the depositions of such parties just so he can raise the Act nor has the principle provided that the Act must be raised on every conceivable pretrial occasion when inquiries are made of an adverse party. *Id.* Thus, we conclude that the Estate's decision not to attend and raise the Act at the depositions of Mrs. Schroeder, Dr. Kamerer and Dr. Goldman did not amount to waiver under this principle.

We also agree that the rules of discovery did not otherwise require the Estate to raise the Dead Man's Act when Mrs. Schroeder and the Estate's co-defendants were deposed in order to preserve the objection for trial. In this regard, Rule 4016(b) applies, since it specifies what objections "are not waived by failure to make them before or during the taking of the deposition. . . ." Pa.R.C.P. 4016(b). The Rule refers to "[o]bjections to the competency of a witness . . . ."in general, and notwithstanding Appellants' assertion to the contrary, includes no limitations on the objections to a witness' competency it covers. Pa.R.C.P. 4016(b). Thus, inasmuch as the parties taking the depositions of Mrs. Schroeder and Drs. Kamerer and Goldman could not have "obviated or removed" any Dead Man's Act objection the Estate would have made, under Pa.R.C.P. 4016(b), we conclude that the Estate did not waive the Act by not raising it at those depositions.

We therefore hold that the Superior Court correctly determined that the trial court erred in ruling that the Estate waived the Dead Man's Act and in granting Appellants' motion *in limine.*

▪▪▪ We now must decide whether the Superior Court correctly determined that this error constituted reversible error, thereby requiring the grant of a new trial. To constitute reversible error, a ruling on evidence must be shown not only to have been erroneous, but also harmful to the party complaining. *See Anderson,* 208 A.2d at 791. As noted above, the trial court's ruling on the Estate's waiver of the Dead

Man's Act was in error. Moreover, this erroneous ruling permitted Mrs. Schroeder to testify that Dr. Jaquiss did not advise her of the scope of the surgery that she underwent or of the risks of the surgery that she came to sustain. This testimony, which went to the heart of Appellants' lack-of-informed-consent claim and which the Estate was in no position to refute, clearly harmed the Estate's case. Further, the consent to surgery form that Mrs. Schroeder executed and her other medical records did not render Mrs. Schroeder's trial testimony in this regard merely corroborative, as Appellants contend. Accordingly, we hold that the Superior Court correctly concluded that the trial court committed reversible error and that a new trial is warranted.[10]

For all of the foregoing reasons, the order of the Superior Court is affirmed.[11]

10. The Estate requested at oral argument that we consider abandoning the *Anderson* waiver principle and urged us to join those jurisdictions that allow a decedent's representative to engage in discovery, having embraced the position that such a party should not be put to choosing between the benefits of a dead man's statute and the right to use discovery procedures. *See, e.g., Taylor v. Taylor*, 643 N.E.2d 893 (Ind.1994); *McGugart v. Brumback*, 77 Wash.2d 441, 463 P.2d 140 (1969); *Banaszkiewicz v. Baun*, 359 Mich. 109, 101 N.W.2d 306 (1960). We decline to do so presently inasmuch as consideration of the *Anderson* rule is not necessary to resolving this particular case.

11. We observe that the Superior Court's determination that the trial court's error prejudiced the Estate was limited to the informed consent claim that Mrs. Schroeder brought against the Estate, and did not include a determination as to whether the error also prejudiced the Estate with respect to Mrs. Schroeder's negligence claim. Nevertheless, we conclude that the verdict in its entirety must be vacated because the jury found in Mrs. Schroeder's favor and against the Estate without making any distinction between the informed consent and negligence claims.