## McConnell v. Dunfee

92

*Joseph L. Messa Jr.,* for plaintiffs.

*John F.X. Monaghan Jr.,* for defendant Dunfee.

JELIN, *J.,* November 5, 2010—This was a medical malpractice action brought by the Estate of James C. McConnell, who had congenital heart problems and died on February 12, 2005. The approximately four-week trial commenced before the Honorable Sheldon C. Jelin on October 2, 2009.

On October 30, 2009, the jury returned a $660,000.00 verdict in favor of plaintiffs and against defendants Dr. Dunfee (20%) and Hahnemann Univ. Hosp. (30%), with 50% comparative negligence found against decedent. With respect to the eight remaining defendants, the jury returned a defense verdict. Plaintiffs filed a motion for post-trial relief, which was denied on March 8, 2010.

Plaintiffs now appeal the trial court's order of March 8, 2010, denying plaintiffs' motion for post-trial relief.

## FACTS

Plaintiffs' decedent had congenital heart problems and died at age 29. Decedent had a history of heart problems. He had had three heart surgeries by the time he was 12 years of age. He had been instructed and knew he should have constant follow-up care for his heart condition.

Yet, by his own admission, he did not have any follow-up care since he was 16 years old. Decedent was a smoker and suffered from asthma.

In October, 2004, decedent was playing football without any contact equipment. During this football game, decedent injured his right shoulder.

Several days after his injury he went to the emergency room at Frankford Hospital and complained of the injury to his shoulder. X-rays were taken and studies were made of his shoulder.

Decedent then saw Dr. Dunfee. From decedent's first visit with Dr. Dunfee, he told Dr. Dunfee he had not seen a heart physician since he was a teenager, although he knew he was supposed to see one and did not.

Dr. Dunfee continuously told decedent to see a heart doctor or cardiothoracic surgeon and follow up on a yearly basis.

Thereafter, decedent had several more visits to various hospitals and doctors complaining only of pain in the area of his injury.

In February, 2005, decedent had heart surgery by Dr. Entwistle at Hahnemann Hospital. The doctor thought the

surgery went well and cleared the decedent for discharge.

Unfortunately, at home, a few days after his discharge from the hospital, he died.

Decedent's estate then brought this lawsuit against the hospitals and doctors who treated decedent from the onset of the football injury until his death.

## PLAINTIFFS' MATTERS COMPLAINED OF ON APPEAL

Plaintiffs complain of several matters on appeal. The court will address them as follows:

1. *"The trial court erred when it permitted the defendants/appellees to introduce decedent's Death Certificate into evidence to establish cause of death."*

Plaintiffs contend that the court erred when it denied plaintiffs' motion in limine to preclude the introduction of decedent's death certificate. Plaintiffs assert that the doctor who signed the death certificate had no basis for his conclusions regarding the cause of decedent's death since there had been no autopsy and the certifying doctor had not reviewed decedent's medical records. Plaintiffs argue further that the death certificate was inadmissible hearsay as it was signed by an unidentifiable non-treating physician, who was unfamiliar with the medical records and could only speculate as to cause of death. The court found this argument to be completely wrong. The death certificate was signed by decedent's last treating cardiothoracic surgeon, Dr. Entwistle. Though plaintiffs made much of the fact that the signature on the death

certificate was illegible, Dr. Entwistle's identity was confirmed by his medical license number. As decedent's last treating physician, Dr. Entwistle was familiar with the medical records and had the requisite personal knowledge to determine the cause of death. Moreover, Dr. Entwistle was a named defendant, who was deposed and subject to cross-examination.

Questions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Leonard v. Nichols Homeshield Inc.*, 557 A.2d 743, 745 (Pa. Super. 1989).

Under the Vital Statistics Law, a duly certified record filed with the Department of Health is prima facie evidence of its contents. 35 P.S. §450.810. A properly authenticated death certificate is generally admissible as proof, though not conclusive, of both the facts and cause of death. *Kubacki v. Metropolitan Life Ins. Co.*, 164 A.2d 48, 53 (Pa. Super. 1960). Thus, while the cause of death may be shown by a death certificate, it is open to explanation and contradiction. *Id.*

The death certificate listed the cause of death as cardiac arrhythmia. Dr. Entwistle, who signed the death certificate, was not only decedent's treating cardiothoracic surgeon, but the physician last in attendance on the deceased, and as such, he was well aware of decedent's medical history and heart condition. Plaintiffs' own expert, Dr. Grossi, opined that he agreed with Dr. Entwistle on the cause of death. N.T. 10/07/09, p. 173 lines 10-21.

2. *"The trial court erred when it refused to allow cross-examination concerning topics contained in medical texts and journals that had been properly authenticated and established as authoritative in the appropriate fields of medicine."*

Under Pa.R.C.P. 227.1(b) defendants waived this issue. Pa.R.C.P. 227.1(b) provides:

...[P]ost-trial relief may not be granted unless the grounds therefor, (1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and (2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds Pa.R.C.P. 227.1(b) (2010).

In the post-trial motion, plaintiffs made vague, unspecific claims that the court improperly precluded plaintiffs' from cross-examining defendants and their experts throughout the trial. Defendants failed to satisfy the requirements of Pa.R.C.P. 227.1(b) because the motion for post-trial relief did not specifically state the ways in which the grounds had been asserted at trial. Thus, the issue has been waived.

"The admission or exclusion of evidence, including the admission of testimony from an expert witness, is within the sound discretion of the trial court." *McClain v. Welker*, 761 A.2d 155, 156 (Pa. Super. 2000). A trial court

will only be reversed "upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id.*

Plaintiffs failed to identify which of the defendants, which of the many defense experts, and which medical texts and journals they were precluded from using in cross-examination. Not only did plaintiffs fail to explain how the court erred, but it also failed to demonstrate how the rulings were harmful or prejudicial to the plaintiffs.

Notwithstanding plaintiffs' waiver, in an abundance of caution, this court will address the issue, which was specified in a sub-paragraph of plaintiffs' matters complained of on appeal.

Plaintiffs claim that it was improper for the court to preclude "plaintiffs' counsel from cross-examining the defendants and their experts concerning topics contained in medical texts and journals that had been properly authenticated and established as authoritative in the appropriate fields of medicine." Plaintiffs then cite, as an example, the court's refusal to permit plaintiffs' counsel to cross-examine defendant Frankford's expert, Dr. Karras, with respect to Harrison's Textbook of Internal Medicine. Plaintiffs claim that Dr. Karras admitted that the textbook was authoritative in the field of internal medicine and that the court erred when it refused to permit plaintiffs' counsel to cross-examine Dr. Karras with the text. N.T. 10/22/09 pp. 152-154.

During the cross-examination of defense expert Dr. Karras, plaintiffs attempted to introduce Harrison's Principles of Internal Medicine. Defense counsel raised an objection on the basis of hearsay, lack of foundation. Contrary to plaintiffs' assertion that the expert admitted the text was authoritative in the field of internal medicine, the expert stated, "I considered it reliable when I practiced internal medicine...Nineteen years ago...I have no knowledge of how authoritative it is currently considered. But I will concede that I considered it authoritative in 1990." N.T. 10/22/09 p. 153. The witness, who was no longer board certified in internal medicine, was familiar with the text only insofar as he was merely aware of its existence. Defense counsel raised a second objection, which the court sustained on the basis that the text had not been authenticated.

"The law in this Commonwealth is well-settled that an expert witness may be cross-examined on the contents of...any other publication which the expert acknowledges to be a standard work in the field. In such cases, the publication or literature is not admitted for the truth of the matter asserted, but only to challenge the credibility of the witness' opinion and the weight to be accorded thereto. Learned writings which are offered to prove the truth of the matters therein are hearsay and may not properly be admitted into evidence for consideration by the jury." *Majdic v. Cincinnati Machine Co.*, 537 A.2d 334, 339 (Pa. Super. 1988). (citations omitted)

Here, the expert did not acknowledge the text as a standard work in the field. Not only was the expert no

longer a member of the field, but he admitted that he had no knowledge of the current authority of the text. Without having authenticated the alleged treatise, there was no basis to permit the use of the text with regard to cross-examination. Therefore, the court's refusal to allow plaintiffs' counsel to cross-examine Dr. Karras with the text was appropriate.

3. *"The trial court erred by permitting hearsay testimony to be read into evidence."*

The use of deposition testimony at trial is governed by Pa.R.C.P. 4020, which provides:

(a) At the trial, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any one of the following provisions:

(2) The deposition of a party or of any one who at the time of taking the deposition was an officer, director, or managing agent of a party or a person designated under Rule 4004(a)(2) or 4007.1(e) to testify on behalf of a public or private corporation, partnership or association or governmental agency which is a party, may be used by an adverse party for any purpose.

(5) A deposition upon oral examination of a medical witness, other than a party, may be used at trial for any purpose whether or not the witness is available to testify. Pa.R.C.P. 4020.

Based on the provisions of Pa.R.C.P. 4020(a)(2), the deposition of a party may be used by an adverse party for any purpose. The use of the deposition testimony of Dr. Entwistle, who was a party, was therefore appropriate. Moreover, Pa.R.C.P. 4020(a)(5) provides that the deposition of a medical witness, other than a party, may be used at trial for any purpose whether or not the witness is available to testify. Therefore, the testimony read from the deposition of Dr. Entwistle, a named defendant, was properly admissible.

4. *"The trial court erred when it permitted the defend-ants/appellees to introduce evidence and unsubstantiated testimony that decedent was drug seeking."*

To constitute reversible error, a ruling on evidence must be shown not only to have been erroneous, but also harmful to the party complaining. *Schroeder v. Jaquiss,* 580 Pa. 381, 390, 861 A.2d 885, 891 (Pa. 2004).

Dr. Emmerich included "drug seeking" as a part of his differential diagnosis when decedent presented to the emergency room on January 14, 2005. Dr. Emmerich then testified that "[a]fter further evaluation of Mr. McConnell, rechecking his CAT scan, doing his physical exam, obviously it was found that I did not believe that he was drug seeking because I sent him home with pain medicine." N.T. 10/19/09, p. 246, lines 18-22.

Although Dr. Emmerich testified that he initially included the possibility that the decedent was drug seeking in his differential diagnoses, he also testified that, upon further evaluation, he did not believe that Mr. McConnell

was drug seeking. N.T. 10/19/09, p. 246, lines 18-22; N.T. 10/20/09, pp. 70-71. This testimony completely negated any reference to drug seeking and plaintiffs cannot show any prejudice.

Additionally, the court initially granted plaintiffs' motion to preclude evidence of drug seeking at trial. N.T. 10/5/09, p. 60, lines 14-19. However, plaintiffs then sought to introduce the issue of drug seeking to establish negligence against Dr. Emmerich. N.T. 10/5/09, pp. 56-81. At plaintiffs' request, the court reversed its ruling and permitted the allegation of drug seeking to come into evidence. N.T. 10/5/09, pp. 65-67, 77-79.

5. *"The trial court erred when it permitted the defendants/appellees to introduce unsubstantiated evidence and testimony that decedent took too many narcotic pain pills."*

Evidence related to drug use was both relevant and probative to the issues of causation nd damages since Dr. Entwistle considered an overdose of pain medication as a possible cause of death. Therefore, the evidence was admissible. Obviously, it had very little impact on the jury since the jury found in favor of the plaintiff for $660,000.00.

6. *"The trial court erred when it permitted the defendants/appellees to introduce evidence that decedent was non-compliant and failed to follow up with a cardiologist."*

Plaintiffs' contention that there was no evidence of required follow-up care is completely inaccurate,

misleading, and untrue. There was substantial evidence of Mr. McConnell's need for follow-up care and his longstanding history of non-compliance. Such evidence was relevant to the issue of contributory negligence.

The testimony elicited from Dr. Grossi, plaintiffs' cardiothoracic surgery expert, was that in his report, he had stated that Mr. McConnell did not have any "cardiologic follow-up during his adult life." Dr. Grossi, plaintiffs' expert, characterized this as noncompliance on the part of Mr. McConnell. N.T. 10/07/09, pg. 145.

Plaintiffs also argue that this evidence was not relevant. However, during the course of the trial, there were issues with respect to Mr. McConnell's refusal to follow recommendations of his primary care physician to be treated by a cardiologist. Mr. McConnell's non-compliance with recommendations for cardiac follow-up during his adult life were relevant to the issue of comparative negligence.

It is hornbook law that if there is any evidence that a plaintiff was at fault for his own injuries then that issue should be given to a jury to apportion fault. *Pascal v. Carter*, 647 A.2d 231, 233 (Pa. Super. 1994). In this case, it was abundantly clear from the medical records and the testimony at trial, that the decedent did not pursue his required treatment.

Dr. Dunfee then gave him a list of adult cardiothoracic surgeons delineated geographically and by hospital affiliation and asked him to see one. N.T. 10/13/09, pp. 18-19; p. 56, lines 14-18.

Plaintiffs' internal medicine expert, Dr. Bell, testified that it would have been important for Mr. McConnell to have returned to CHOP in 2000 if he was having arrhythmias because an individual who had three prior surgeries is prone to them and arrhythmias could cause death. N.T. 10/14/09, p. 116, lines 14-25; p. 117 lines 1-20.

7. *"The trial court erred when it permitted defendants/ appellees to introduce evidence that decedent failed to return to the Emergency Room prior to his death through unsubstantiated evidence and hearsay testimony."*

The introduction of the deposition testimony of a physician at trial is permissible pursuant to Pa.R.C.P. 4020(a)(5), which provides:

(a) At the trial, any part or all of a 'deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any one of the following provisions:

(5) A deposition upon oral examination of a medical witness, other than a party, may be used at trial for any purpose whether or not the witness is available to testify. Pa.R.C.P.4020(a)(5).

During the trial, excerpts from the deposition of Dr. Cassano were read into the record to establish that Dr. Cassano called Mr. McConnell on Saturday, February 12, 2005, and advised him to come to the Emergency Department for evaluation, that Mr. McConnell refused,

that Dr. Cassano spoke with Mr. McConnell's grandfather and advised him to bring Mr. McConnell back to the Emergency Department, that his grandfather refused and that Dr. Cassano called to check on Mr. McConnell the next day, February 13, 2005. These contacts were supported by other sources, including correspondence from Dr. Entwistle and the depositions of Mr. McConnell's grandparents and the visiting nurse. While plaintiffs' counsel challenged the truth of these events, the issue of Dr. Cassano's credibility was one to be weighed by the jury in determining the consideration to be given to this testimony.

Plaintiffs' own expert cardiothoracic surgeon, Dr. Grossi, conceded that if a patient chose not to return to the emergency room despite instructions to do so, he would be non-compliant. N.T. 10/07/09, pp. 223-225.

Plaintiffs argue that Dr. Cassano's deposition testimony should have been precluded because defendants failed to produce a document. Specifically, Dr. Cassano testified that his telephone conversation with the McConnell family was documented in a patient contact form, which was not produced by defendants.

The patient contact form was a document belonging to the CT surgery office, in the control of Drexel University College of Medicine, a non-defendant in the case. N.T. 10/05/09, pp. 39-40. Defendants cannot be charged with spoliation of documents over which they had no control.

At trial there was ample evidence to support a finding by the jury that Mr. McConnell was instructed, but refused,

to return to the emergency room prior to his death.

Under Pa.R.C.P. 4020(a)(5), the introduction of testimony at trial of a physician by deposition is permissible, therefore, the court did not err in allowing Dr. Cassano's deposition testimony to be read into evidence.

**8.** *"The trial court erred when it precluded relevant testimony of a meeting between decedent's family members and Frankford Hospital defendants when Frankford defendants failed to admit decedent to the hospital."*

Evidence that is not relevant is not admissible. Pa.R.E. 402 (2010). Evidence of an alleged meeting between Mr. McConnell's family and Frankford Hospital administrators, which is alleged to have taken place at least one month after Mr. McConnell's death, was irrelevant to the issues of negligence and causation.

The meeting, which occurred after Mr. McConnell's death, was wholly irrelevant to the events leading up to his death. Therefore, the court did not abuse its discretion in precluding the introduction of evidence of the meeting at trial.

**9.** *"The trial court erred when it precluded relevant testimony from fact witness, friend and fiance of decedent, Amy Holewinski."*

Plaintiffs' claim that the court erred when it precluded the testimony of Amy Holewinski is totally without merit. Ms. Holewinski had been held in contempt of court by the Honorable Howland H. Abramson for failure to obey valid subpoenas for her deposition testimony. Having

failed to appear for her deposition and having been found in contempt of court, any testimony by Ms. Holewinski would have resulted in extreme prejudice to the defendants. Moreover, there has been no offer by plaintiffs that her testimony would have been helpful to their case. The court properly granted defendants' motion to preclude the testimony of Amy Holewinski.

In actuality, this complaint is meritless. Plaintiffs had tried to get this witness to cooperate but were unable to do so. She had been a former girlfriend of decedent, they had a falling out, and it is highly unlikely that she would have been helpful to plaintiffs' case.

10. *"The trial court erred when it permitted improper comments during opening statements made by defense counsel."*

Plaintiffs allege that the court erred when it permitted improper comments during opening statements and failed to give a cautionary or curative instruction. This issue was waived by plaintiffs' failure to assert a timely objection.

Plaintiffs' counsel failed to object at the time the comments were made and did not object until after closing argument had been completed and the jury had been excused for a break. Only after requesting a break to set up the first witness did plaintiffs' counsel mention that it found the statements by counsel to be inappropriate. Plaintiffs' failure to raise the objection at an appropriate time resulted in a waiver of the issue.

"A new trial is not required where the remarks made by counsel were neither inflammatory or prejudicial."

*Mansour v. Linganna*, 787 A.2d 443, 449 (Pa. Super. 2001). Here, the opening remarks by defense counsel were neither inflammatory nor prejudicial. The court instructed the jury that opening arguments are not facts, they are merely an outline. N.T. 10/05/09, p. 19, lines 14-24. Plaintiffs had the opportunity to object in a timely manner and did not do so. Plaintiffs' claim of not wanting to interrupt defense counsel does not excuse the untimely objection. Plaintiffs interrupted defense counsel throughout the course of the trial.

11. *"The trial court abused its discretion in refusing to permit plaintiffs/appellant to use demonstrative exhibits, including animations, at trial."*

The video animation at issue had not been produced before trial, and defense counsel had not had an opportunity to review it in advance. The first time plaintiffs counsel advised defense counsel of the animation was the moment before he intended to use it at trial. Defendants immediately objected on the basis of prejudice, timing, and accuracy.

Without having had prior knowledge of the animation's existence or the opportunity to submit it for expert review, the defendants would have been severely prejudiced. The plaintiffs should have produced the exhibit within the discovery deadlines.

"[T]o constitute reversible error, a ruling on evidence... must not only be erroneous, but it must also be harmful or prejudicial to the complaining party." *Johnson v. Hyundai Motor Am.*, 698 A.2d 631, 637 (Pa. Super. 1997). It was well within the sound discretion of the court to refuse to

permit the plaintiffs to use the demonstrative evidence. Even without the use of the animation, plaintiffs went on to win the case and can hardly complain they suffered prejudice.

12. *"The trial court abused its discretion by precluding testimony by plaintiffs' experts that was necessary to support vital opinions concerning causation and standard of care, while permitting such testimony from defendants'/ appellees' experts."*

Plaintiffs statement of matters complained of on appeal is incorrect because Dr. Bell did testify about causation. Dr. Bell did opine that the care provided by Dr. Dunfee caused a delay in the diagnosis and worsened the process. N.T. 10/14/09 p. 102.

With respect to Dr. Omalu, plaintiffs' counsel agreed to limit Dr. Omalu to causation and stated that Dr. Omalu would not render any opinion as to standard of care. N.T. 10/19/09 pp. 17-18,22. Plaintiffs agreed to limit the testimony of the expert and cannot now complain of error.

Plaintiffs claim the court erred when it granted defendant Dr. Singhal's motion in limine to preclude Dr. Grossi from testifying on the standard of care against Dr. Singhal. Pursuant to the MCARE Act, an expert testifying as to a physician's standard of care must "[p]ractice in the same subspecialty as the defendant physician...." 40 P.S. 1303.512(c)(2). Dr. Singhal was an emergency medical specialist. Dr. Grossi was a cardiothoracic surgeon. Dr. Singhal and Dr. Grossi did not practice within the same

subspecialty. Therefore, Dr. Grossi's testimony regarding the standard of care for Dr. Singhal was precluded by the MCARE Act.

Plaintiffs claim the court erred when it granted defendant Dr. Dunfee's motion in limine to preclude Dr. Grossi from testifying on the standard of care against Dr. Dunfee. As stated above, the MCARE Act requires that an expert testifying as to a physician's standard of care practice in the same subspecialty as the defendant physician. 40 P.S. 1303.512(c)(2). Dr. Dunfee was a family doctor. Dr. Grossi was a cardiothoracic surgeon. Dr. Dunfee and Dr. Grossi did not practice within the same subspecialty. Therefore, Dr. Grossi's testimony regarding the standard of care for Dr. Dunfee was precluded by the MCARE Act.

Plaintiffs claim the court erred when it granted defendant Frankford Hospital's motion in limine to preclude Dr. Grossi from testifying on the standard of care for emergency room doctors. As stated above, the MCARE Act requires that an expert testifying as to a physician's standard of care practice in the same subspecialty as the defendant physician. 40 P.S. 1303.512(c)(2). The Frankford Hospital defendants were emergency room doctors. Dr. Grossi was a cardiothoracic surgeon. The Frankford Hospital doctors and Dr. Grossi did not practice within the same subspecialty. Therefore, Dr. Grossi's testimony regarding the standard of care for emergency room doctors was precluded by the MCARE Act.

Plaintiffs claim the court erred when it granted Dr. Wagner's motion in limine to preclude Dr. Williams from

testifying on the standard of care against Dr. Wagner. Dr. Wagner was a radiologist. Dr. Williams was an emergency room physician. The doctors did not practice within the same subspecialty. Therefore, Dr. Williams' testimony regarding the standard of care against Dr. Wagner was precluded by the MCARE Act.

Plaintiffs claim the court erred when it granted Dr. Dunfee's motion in limine to preclude Dr. Williams from testifying on the standard of care against Dr. Dunfee. Dr. Dunfee was a family care doctor. Dr. Williams was an emergency room physician. The doctors did not practice within the same subspecialty. Therefore, Dr. Williams' testimony regarding the standard of care for Dr. Dunfee was precluded by the MCARE Act.

Plaintiffs claim the court erred when it granted Frankford Hospital's motion in limine to preclude Dr. Berg from testifying on the standard of care for emergency doctors. The doctors at Frankford Hospital were emergency medicine physicians. Dr. Berg was an internal medicine and infections disease expert. Dr. Berg, having a different subspecialty, was not permitted to testify to the standard of care of emergency medicine physicians pursuant to the MCARE Act.

13. *"The trial court erred by permitting inappropriate expert testimony by defendants'/appellees' experts."*

Plaintiffs claim the court erred by permitting inappropriate expert testimony by defendants' expert, Dr. Kelly. This is completely misleading and wrong. Dr. Kelly never testified. Plaintiffs had filed a motion in limine to

preclude the testimony of this witness, which the court denied, but the matter became moot when defense never called Dr. Kelly to testify.

Therefore, this matter complained of on appeal has no basis whatsoever.

With respect to defendants' expert, Dr. Wetli, plaintiffs' statement of matters complained of on appeal is incorrect because plaintiffs' motion in limine to preclude Dr. Wetli was granted in part and denied in part. The court excluded the portions of Dr. Wetli's report that addressed the drug seeking issue. More importantly, this matter is moot because defense never called Dr. Wetli to testify.

Plaintiffs claim the court erred in denying plaintiffs' motion in limine to preclude Dr. Newman from testifying as to the standard of care of Dr. Dunfee.

This issue is also moot because defense never called Dr. Newman to testify. Nevertheless, his testimony would have been relevant. Plaintiffs intended to call Dr. Steinfield, an orthopedic surgeon, who saw decedent one time, to criticize the care rendered by Dr. Dunfee. Dr. Dunfee intended to call Dr. Newman, an orthopedic surgeon, to refute the testimony of Dr. Steinfield. This amounts to an orthopedic surgeon being offered to refute the testimony of another orthopedic surgeon. This is proper evidence for the jury to consider.

The court did not permit Dr. Newman to testify concerning the treatment rendered by Dr. Dunfee.

Defense expert, Dr. Manion, a pathologist, was called to

refute the testimony of plaintiffs' pathologist, Dr. Omalu, and his testimony was limited to causation. By agreement of counsel, Dr. Manion was not permitted to testify as to standard of care. N.T. 10/23/09 p. 148-149.

14. *"The trial court abused its discretion by making improper statements in front of the jury."*

A trial judge possesses broad power and discretion to control the course of the trial. In the case at bar, there is no evidence of impartiality, unfairness, or prejudice exhibited by the court. The court acted objectively, in an effort to move the case forward and prevent undue delays. The court was fair and impartial in front of the jury and plaintiffs' claims in this regard are meritless.

It is interesting to note that plaintiffs did not make mention of any judicial misconduct at oral argument for their post-trial motion.

Plaintiffs cannot justify any prejudice in view of the fact they won a verdict in the amount of $660,000.00.

15. *"The trial court erred when it charged the jury in a manner which was inconsistent with the law."*

Plaintiffs complain that the court improperly emphasized plaintiffs burden of proof to the jury. Plaintiffs do not specifically state which particular charges were erroneous, but claim they suffered prejudice because the court reiterated that "plaintiff must prove" and "plaintiff has the burden of proving" several times. Plaintiffs' assertion that the court's recitation of the jury charges highlighted plaintiffs' burden is without merit.

"A trial court has broad discretion in phrasing jury instructions, and may choose its own wording as long as the law is clearly, adequately and accurately presented to the jury for its consideration...A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue. Therefore, a charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said." *Vallone v. Creech*, 820 A.2d 760, 764 (Pa. Super. 2003). (citations omitted)

"In reviewing a claim regarding error with respect to a specific jury charge, we must view the charge in its entirety taking into consideration all the evidence of record and determine whether or not error was committed and, if so, whether that error was prejudicial to the complaining party." *Carpinet v. Mitchell*, 853 A.2d 366, 371 (Pa. Super. 2004). (citations omitted)

Here, the instructions read to the jury were an accurate statement of the law. The court read Suggested Standard Jury Instruction 11.03 and did not deviate from the standard charge. The explanation of the law was correct and proper.

16. *"The trial court erred by including released defendants on the verdict sheet."*

At trial, there was sufficient evidence to support that the settled defendants were negligent, and that their negligence caused decedent's harm. Therefore the inclusion of settled defendants on the verdict sheet was proper.

114

17. *"The trial court erred, and showed its bias against the plaintiffs/appellants, by granting virtually all of defendants'/appellees' motions in limine while improperly denying virtually all of plaintiffs'/appellants' motions in limine."*

It appears that plaintiffs claim the court should grant or deny the same number of motions for the plaintiffs and the defendants. That is completely wrong.

The court grants or denies a motion based on merit. It makes no difference how many motions are filed by one side or the other.

If all the motions filed by one side have merit, they will be granted regardless of how many are granted or denied on the other side.

Decisions are made on merit, not bias.

## CONCLUSION

As a result of the foregoing, this court respectfully requests that the order dated March 8, 2010, which denied plaintiffs' motion for post-trial relief, be affirmed.