**In re Estate of Ambrosia**

*John J. DeCaro, Jr. and Frank G. Salpietro,* for

petitioner.

*Charles J. Avalli,* for respondent.

HODGE, *J.,* April 3, 2014—Before the court for disposition is a motion in limine filed on behalf of Carmen W. Shick, executor of the Estate of Rose Marie Ambrosia (hereinafter, the "executor"). The pending motion in limine relates to certain pieces of jewelry located in a safety deposit box housed at PNC Bank. Prior to reaching a determination on the instant motion, the court will provide the following summation of the relevant factual and procedural background of this case:

Rose Marie Ambrosia (hereinafter, the "decedent") died testate on January 31, 2012. decedent was survived by four grandchildren, Kendra A. Shick, Kenneth R. Shick, III, (hereinafter, collectively referred to as the "beneficiaries"), Carmen W. Shick and Rosemarie Bartholomew. At the time of the decedent's death, various pieces of jewelry were in the possession of the beneficiaries. The jewelry was kept in a safety deposit box at PNC Bank. The safety deposit box was titled in the beneficiaries' names. Following the grant of letters to the executor, the executor filed a Petition for Special Relief in this court, requesting the court to determine ownership of the jewelry.

The instant motion in limine was filed on December 28, 2012, wherein the executor sought to preclude the testimony of the beneficiaries and Jodi Shick, Kenneth R. Shick, III's wife, as to whether the decedent gifted the jewelry to the beneficiaries prior to her death. Shortly thereafter, the executor filed a petition to gain access [to the Safety Deposit Box] because the executor desired to have the jewelry appraised prior to filing an Inheritance Tax Return on behalf of decedent's estate.

This court granted the executor access to the safety

deposit box and the jewelry was appraised. At the time the executor petitioned for access to the safety deposit box, the beneficiaries contended that the request constituted a discovery request, resulting in a waiver of the Dead Man's Act. Beneficiaries alternatively contend that their testimony cannot be summarily precluded under the Dead Man's Act in cases where the decedent's donative intent can be independently established. Based on the foregoing facts, the court determines the issues presently before the court to be as follows: whether the testimony of the beneficiaries and Jodi Shick must be excluded pursuant to 42 Pa.C.S.A. Section 5930; and if they are determined to be incompetent witnesses, if a waiver has not occurred, thereby eliminating the provisions of 42 Pa.C.S.A. Section 5930.

Pennsylvania adopted the Dead Man's Act at 42 Pa.C.S.A. Section 5930, (hereinafter, the "Act"). The Act provides, in pertinent part:

> [I]n any civil action or proceeding, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased or lunatic party, shall be a competent witness to any matter occurring before the death of said party or the adjudication of his lunacy,....

42 Pa.C.S.A. § 5930.

The purpose of the Act is "'to prevent the injustice which might flow from permitting the surviving party to a transaction with a decedent to give testimony thereon

favorable to himself and adverse to the decedent, which the latter's representative would be in no position to refute.'" *Stathas v. Wade Estate*, 380 A.2d 482, 483 (Pa. Super. 1977) (internal citation omitted). Before a witness is declared incompetent to testify under the Dead Man's Act, three conditions must exist: (1) the deceased must have had an actual right or interest in the matter at issue; (2) the interest of the witness, not simply the testimony, must be adverse to that of the decedent; and (3) a right of the deceased must have passed to a party of record who represents the deceased's interest. *Olson v. North American Industrial Supply*, 658 A.2d 358 (Pa. Super. 1995).

Applying the three-prong test set forth above, the court determines that the three conditions enumerated in *Olson* are present in this case. Therefore, the provisions of the Act are before the court for consideration. According to the Act, surviving parties who have an interest which is adverse to decedent's estate are disqualified from testifying as to any transaction or event which occurred before decedent's death. *Zigmantanis v. Zigmantanis*, 797 A.2d 990 (Pa. Super. 2002). When the case at bar regards the validity of an inter vivos gift, statements of the decedent cannot be admitted absent independent testimony establishing the decedent's donative intent. *Id.* If the independent testimony offered can establish a prima facie case of the decedent's donative intent, a witness who would be otherwise incompetent to testify pursuant to the restrictions of the act may testify as to the statements and actions of the decedent. *Id.*; *see also Ford Estate*, 245 A.2d 443 (Pa. 1968).

Based on the foregoing, the beneficiaries are clearly incompetent to testify as to the validity of the alleged gift to them by the decedent. However, the beneficiaries contend that the testimony of Jodi Shick should not be

summarily precluded on the same grounds as that of Kendra A. Shick and Kenneth R. Shick, III. Therefore, the initial issue before the court is whether Jodi Shick must be declared incompetent to testify regarding the alleged inter vivos gift to the beneficiaries because she has an interest adverse to the decedent as a spouse of one of the beneficiaries.

Controlling of the court's determination of this issue is the case of *Estate of Grossman*, 406 A.2d 726 (Pa. 1976). In *Grossman*, Ronda Kesselman, a disinherited daughter of the decedent, Herman Grossman, sought to establish that she was entitled to a portion of her father's estate by showing that she and her father had an oral agreement whereby the decedent promised to execute a will leaving one half of his estate to her. *Id.* at 727. The trial court refused to permit Ronda or her husband, Stanley Kesselman, to testify and dismissed Ronda's claims against the estate. Ronda appealed the trial court's ruling, claiming that the trial court erred applying the provisions of the Dead Man's Act against her husband.

On review, the Supreme Court of Pennsylvania clearly held that "the testimony of the spouse of an interested witness may no longer be disqualified on the theory that husband and wife are one and the same person." *Id.* at 731. Therefore, it is improper to infer that a spouse has an interest adverse to that of the decedent merely because he or she is married to an incompetent witness. *Id.* at 731-32.

Based upon the unequivocal precedent established in *Grossman*, the court determines that it is improper to preclude the testimony of Jodi Shick on the basis of incompetence. The executor has failed to show that Jodi Shick has any interest adverse to the decedent outside of the fact that she is married to one of the beneficiaries. The beneficiaries can therefore offer the testimony of Jodi

Shick to independently establish a prima facie case of the decedent's donative intent.

The court will next address the beneficiaries contention that the executor has waived the protections of the Dead Man's Act by requesting an appraisal of the jewelry in question. Although the Act exists to protect the decedent's estate, the representative of the estate may waive the disqualification of the adverse party by "taking his deposition or requesting a response to written interrogatories pursuant to the discovery rules found in the Pennsylvania Rules of Civil Procedure. *Olson*, 658 A.2d 358 at 364-65 (*referencing* Pa.R.C.P., Rules 4004, 4005, and 4007.1; *See also Flagship First National Bank of Miami Beach v. Bloom*, 431 A.2d 1082, 1085 (Pa. Super. 1981); *Perl is v. Kuhns*, 195 A.2d 156, 158 (Pa. Super. 1963) (if decedent's representative requires the adverse party to submit to a deposition or respond to written interrogatories, this amounts to a waiver of the Dead Man's Act). A representative may also waive the disqualification of the adverse party by testifying on his or her own behalf as to facts occurring subsequent to the decedent's death. *Estate of Kofsky*, 409 A.2d 1358 (Pa. 1979).

In the present case, the executor requested the court to permit him to inspect the subject jewelry, which was in the exclusive possession of the beneficiaries. As previously stated, the beneficiaries contend that the executor's request constituted a waiver of their disqualification pursuant to the Act. The executor refutes the beneficiaries' contention by arguing that an inspection of the jewelry was conducted to complete his normal obligations as administrator of the decedent's estate, and not a formal discovery request.

Pertinent to the court's determination is the case of *Anderson v. Hughes*, 208 A.2d 789 (Pa. 1965). In *Anderson*, Gary Anderson was driving in a funeral

14

procession when he was struck by a truck operated by Gene Ford. 208 A.2d at 790. At the time of the accident, Ford was carrying out his employment obligations for Hughes & Sons (hereinafter, "Hughes" or "defendants"), which owned the truck that struck the Anderson's vehicle. *Id.* Hughes & Sons was a private partnership owned by James Hughes, Jr., James Hughes, Sr. and Donald Hughes. *Id.* Anderson instituted a complaint in trespass against Ford and Hughes. *Id.* Prior to the commencement of trial, James Hughes, Sr. died, and his personal representative was substituted of record as a defendant. *Id.*

During the course of trial, objections were raised as to the testimony of Anderson against James Hughes, Sr. by defendants based upon the Dead Man's [Act]. 208 A.2d at 791. The trial court sustained defendant's objection and precluded Anderson from testifying against James Hughes, Sr. *Id.* Subsequently, the jury returned a verdict in favor of Ford and Hughes. *Id.* On appeal, Anderson asserted that the trial court's ruling was erroneous because his incompetency to testify under the Act had been waived when defendants deposed Anderson as to matters occurring prior to James Hughes, Sr.'s death. *Id.* Defendants argued that a waiver had not occurred because the deposition was never offered at trial.[1] *Id.* The Superior court of Pennsylvania affirmed the trial court's ruling, and Anderson appealed to the Supreme Court of Pennsylvania. *Id.* After considering Anderson's appeal, the Supreme Court determined that

"where a party is required to answer pre-trial

---

1. The trial court conceded Anderson's contention on appeal, but noted for the record that the court was unaware that Anderson had been deposed by defendants because Anderson failed to specify his argument at the time he raised his objection. The trial court concluded that its failure to make a proper evidentiary ruling did not constitute reversible error.

interrogatories, any objection based upon the 'Dead Man's' rule to the competency of such party to testify at the trial is waived even though the answers to the interrogatories were not offered into evidence."

Id. at 791 (citing *Perlis v. Kuhns*, 195 A.2d 156 (Pa. Super. 1963).[2]

The court also considers the more recent case of *Schroeder v. Jaquiss*, 861 A.2d 885 (Pa. 2004), which affirmed the prior rulings issued in *Anderson*, supra and *Perlis*, supra by stating

[t]he Dead Man's Act itself does not address the circumstances by which a decedent's representative waives the statute's protection during the discovery process. The courts, however, have applied the doctrine of waiver to the Act in this context. The principle that presently controls was set forth in *Anderson*. It provides that when a decedent before he died or a decedents representative has required an adverse party to be deposed or to answer interrogatories, any objection based upon the Dead Man's Act to the competency of such a party to testify at the trial is waived, even though the discovery is not offered in evidence. At the time this rule arose, the courts apparently viewed the taking of discovery as the functional equivalent of trial testimony, and in developing the rule, sought to prevent the unfairness that they perceived would ensue if a decedent's representative could gain information from an adverse party through discovery and then repudiate the results, if what was learned proved to be

---

2. The Perlis case expounded on the Supreme Court's prior determination in *Rosche v. McCoy*, 156 A.2d 307 (Pa. 1959), which required the deposition of the decedent to be offered into evidence in order to establish that a party otherwise determined to be incompetent to testify may in fact testify against the decedent.

unsatisfactory.

*Schroeder*, 861 A.2d at 388 (internal citations omitted).

In the instant case, the beneficiaries rely upon the Supreme Court's ruling in *Schroeder* to support their contention that any form of discovery constitutes a waiver of the Act and renders an otherwise incompetent witness competent to testify. After a thorough review of the court's ruling in *Schroeder*, this court cannot incorporate the beneficiaries' interpretation as that of the court's. The context of discovery discussed in all of the above referenced cases constituted either a deposition, request for answers to interrogatories or both. Thus, when the *Schroeder* court references 'the taking of discovery' this court believes it is referring to taking a deposition or issuing interrogatories, and not, as the beneficiaries suggest all discovery. The court therefore concludes that the executor's request for an appraisal of the jewelry did not constitute a waiver of the Act because as the beneficiaries content, their request merely enabled them to determine the value of the subject jewelry. The appraisal did not supply either party with the type of testimonial evidence that would constitute a waiver. In this regard, the information received substantially differs from the type of information obtained by the requesting parties in the cases reviewed by this court. For this reason, the court finds that the actions of the executor do not constitute a waiver of the Act.

Consistent with this opinion, the court will enter the following order of court:

## ORDER OF COURT

And now, this 3rd day of April, 2014, with this matter being before the court for argument on a motion in limine filed on behalf of Carmen W. Shick, executor of the Estate

of Rose Marie Ambrosia, by and through his counsel, John J. DeCaro, Jr., Esquire and Frank G. Salpietro, Esquire, and with Charles J. Avalli, Esquire, appearing and representing Kendra A. Shick and Kenneth R. Shick, III, and consistent with the attached Opinion, the court hereby orders and decrees as follows:

1. A hearing on the underlying petition for special relief, filed on October 9, 2012 is hereby scheduled for the 19th day of August, 2014 at 10:00 a.m. in courtroom #4 of the Lawrence County Government Center, one (1) day reserved status.

2. The executor's motion in limine seeking to preclude the testimony of Jodi Shick is denied.

3. The executor's motion in limine seeking to preclude the testimony of Kendra A. Shick and Kenneth R. Shick, III is granted.

4. Kendra A. Shick and Kenneth R. Shick, III are declared incompetent to testify; however the court's determination may be rescinded if Kendra A. Shick and Kenneth R. Shick, III can initially and independently establish a prima facie case of the decedent's donative intent.

5. The oral motion for attorney's fees made by counsel for the executor is hereby denied.

6. The prothonotary is directed to file the attached correspondence of record and properly serve notice of this order of court upon counsel of record for the parties and upon any unrepresented party at their last known address as contained in the court's file.