J-S04032-17

2017 PA Super 48

| DONALD DAVIS, CARMEN GIBSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BYRON WRIGHT, JR., | : | No. 2320 EDA 2016 |
| ADMINISTRATOR OF THE ESTATE OF | : | |
| BYRON L. WRIGHT, DECEASED | : | |

Appeal from the Order July 13, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  No. 150701828

BEFORE:  SHOGAN, OTT and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                   **FILED February 27, 2017**

Donald Davis and Carmen Gibson (collectively "Appellants") appeal

from the Court of Common Pleas of Philadelphia County's July 13, 2016,

order granting the motion for summary judgment filed by Appellee Bryon

Wright, Jr., as Administrator of the Estate of Byron L. Wright ("the

deceased").[1]  For the reasons set forth below, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] The trial court's July 13, 2016, order did not dispose of a pending
counterclaim, and thus, Appellants' appeal therefrom was premature.  **See**
Pa.R.A.P. 341(a); **Bonner v. Fayne**, 657 A.2d 1001 (Pa.Super. 1995).
However, subsequent to Appellants' filing of the instant appeal, the trial
court entered an order on September 12, 2016, which dismissed the pending
counterclaim with prejudice.  Accordingly, our appellate jurisdiction has been

*(Footnote Continued Next Page)*

The relevant facts and procedural history are as follows: On July 16, 2015, Appellants filed a civil complaint averring that, on May 25, 2014, at approximately 9:30 p.m., Mr. Davis was operating a vehicle in which Ms. Gibson was a passenger when, without any negligence on their part, the deceased, who was operating his vehicle negligently, collided with their vehicle, resulting in serious, severe, and permanent injuries to Appellants.[2]

On July 28, 2015, Appellee, as administrator of the deceased's estate,[3] filed an answer with new matter averring, *inter alia*, that the deceased was not negligent in any respect; Appellants were contributorily and/or comparatively negligent; Appellants assumed the risk of their activities; and the injuries and damages caused to Appellants were caused by or contributed to by the negligent acts or omissions of entities other than the deceased. Moreover, Appellee presented a counterclaim against Mr. Davis alleging the accident was caused solely by his negligent operation of his vehicle, and any injuries sustained by Ms. Gibson was attributed solely to Mr. Davis' negligence.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

perfected. **See Drum v. Shaull Equipment and Supply, Co.**, 787 A.2d 1050 (Pa.Super. 2001).

[2] Appellants also averred in their complaint that the deceased was operating his vehicle in a "reckless" manner; however, by stipulation entered on July 23, 2015, Appellants withdrew all allegations and claims related to recklessness.

[3] The deceased passed away on September 22, 2014.

Appellants filed a reply to Appellee's new matter, and Mr. Davis filed a reply to Appellee's counterclaim. On April 29, 2016, Appellee filed a motion for summary judgment, along with a supporting memorandum. In the motion, Appellee alleged, in relevant part, the following:

**8.** [The decedent] was interviewed about the happening of the accident on May 27, 2014.

**9.** [The decedent] describes an accident occurring at approximately 10:30 p.m. He was traveling southbound on 84th St. There are two travel lanes. [The] decedent was in the left land and [Appellants'] vehicle was in the right lane.

**10.** According to [the] [d]ecedent [Appellants'] vehicle made a sudden lane change into his lane causing the collision.

**11.** [The] [d]ecedent describes a low-speed impact. At the accident scene, [Appellants] said "we are going to get us some money now."

**12.** A photograph of [the decedent's] vehicle shows damage to the driver side front of the vehicle.

**13.** A photograph of [Appellants'] vehicle shows damage to the passenger side rear.

**14.** If alive, [the decedent] would testify that the accident was caused by the actions of [Mr. Davis.]

**15.** If alive, [the decedent] would testify regarding the lack of severity of impact, and the statements made by [Appellants] at the accident scene in his defense of [Appellants'] claims for injury.

**16.** [Appellants] are precluded from testifying against [Appellee] by virtue of the Dead Man's [Statute,] 42 Pa.C.S.A. [§] 5930.

**17.** If [Appellants] are precluded from testifying about the happening of the accident and the nature and extent of their injuries, they will not be able to prove their case against [Appellee].

**18.** Allowing [Appellants] to testify against [Appellee] will be extremely prejudicial to [Appellee] since [the decedent], by virtue of his death, is unable to testify.

Appellee's Motion for Summary Judgment, filed 4/29/16, at 3-4 (citations to record omitted). Accordingly, Appellee requested the trial court enter summary judgment in favor of the estate since "application of [the] Dead Man's [Statute] prohibits [Appellants] from testifying against [Appellee] thereby making it impossible for [Appellants] to prove their claims of negligence[.]" Appellee's Memorandum of Law in Support of Motion for Summary Judgment, filed 4/29/16, at 5.

On May 26, 2016, Mr. Davis filed an answer in opposition to Appellee's motion for summary judgment requesting the trial court deny Appellee's motion for summary judgment as to Appellants' complaint but enter summary judgment in favor of Mr. Davis as to Appellee's counterclaim. Mr. Davis' theory was that Appellee admitted in the motion for summary judgment that Appellee could produce no evidence in support of the counterclaim.

Thereafter, on May 31, 2016, Appellants filed a joint response in opposition to Appellee's motion for summary judgment in which they contended that Appellee had waived the protections of the Dead Man's Statute by failing to timely raise the issue in the answer and new matter to Appellants' complaint, *i.e.*, the first responsive pleading following the decedent's death. Also, Appellants averred Appellee had waived application of the Dead Man's Statute by participating in discovery, *i.e.*, deposing the police officer who authored the investigation report of the subject accident.

Alternatively, Appellants argued that, assuming, *arguendo*, Appellee did not waive application of the Dead Man's Statute, the evidence of record still supported a *prima facie* claim that the decedent was negligent, *i.e.*, the police officer, who is an independent third party, would be competent to testify the decedent was negligent. Accordingly, Appellants requested the trial court deny Appellee's motion for summary judgment.

By order dated July 13, 2016, the trial court granted Appellee's motion for summary judgment and dismissed Appellants' complaint with prejudice. However, the trial court specifically noted "the request to have all [counterclaims] dismissed is denied without prejudice for [Mr. Davis] to file a motion requesting this relief." Trial Court Order, dated 7/13/16, at 1 (footnote omitted).

On July 14, 2016, Mr. Davis filed a motion for summary judgment, along with a supporting memorandum, pertaining to Appellee's counterclaim. However, prior to the trial court ruling on Mr. Davis' motion for summary judgment, Appellants filed the instant notice of appeal on July 18, 2016. In any event, thereafter, on September 12, 2016, the trial court entered an order granting Mr. Davis' motion for summary judgment and dismissing with prejudice the pending counterclaim. The trial court did not direct Appellants to file a Pa.R.A.P. 1925(b) statement, and thus, no such statement was filed.

However, the trial court filed a Pa.R.A.P. 1925(b) opinion explaining the reasons for its decision. [4]

Appellants present the following issues for our review:

1. Whether the trial court abused its discretion and otherwise committed an error of law when it improperly granted [Appellee's] Motion for Summary Judgment, despite the fact that there was a waiver of the protections of the Dead Man's [Statute] by both participation in discovery as well as a failure by [Appellee] to timely and properly object in [Appellee's] first responsive pleading?

2. Whether the trial court abused its discretion and otherwise committed an error of law when it improperly granted [Appellee's] Motion for Summary Judgment, despite the fact that there were other competent witnesses and documentary evidence, aside from [Appellants'] testimony, which establishes the decedent/[Appellee's] liability?

Appellants' Brief at 5.

At the outset, we note that we review a challenge to the entry of summary judgment as follows:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. [Pa.R.C.P. 1035.2(1).] Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary

_____

[4] Appellee did not file a cross-appeal, and thus, we limit our analysis accordingly.

- 6 -

judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. [Pa.R.C.P. 1035.2(2).] Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 562–63 (Pa.Super. 2014) (citation omitted).

Moreover, inasmuch as this appeal involves the Dead Man's Statute, we note the Statute provides, in relevant part, the following:

**§ 5930. Surviving party as witness, in case of death, mental incapacity, etc.**

Except as otherwise provided in this subchapter, in any civil action or proceeding, where any party to a thing or contract in action is dead,...and his right thereto or therein has passed,...to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased..., shall be a competent witness to any matter occurring before the death of said party....

42 Pa.C.S.A. § 5930 (bold in original).

The Dead Man's Statute is an exception to the general rule of evidence in this Commonwealth that: "no interest or policy of law...shall make any person incompetent as a witness." 42 Pa.C.S.A. § 5921. The Statute "provides an exception to the general rule of competency and disqualifies surviving parties to a transaction or event who have an interest adverse to the decedent from testifying as to matters which occurred prior to the decedent's death." *Estate of Kofsky*, 487 Pa. 473, 476, 409 A.2d 1358,

1359 (1979) (citation omitted). "The purpose of the [S]tatute is to prevent the injustice that may result from permitting a surviving party to a transaction to give testimony favorable to himself and adverse to the decedent, which the decedent's representative would be in no position to refute by reason of the decedent's death." *Larkin v. Metz*, 580 A.2d 1150, 1152 (Pa.Super. 1990) (citations omitted).

In their first claim, Appellants aver the trial court improperly concluded, as a matter of law, that Appellee did not waive the protections afforded under the Dead Man's Statute. More specifically, Appellants contend Appellee waived application of the Dead Man's Statute since (1) Appellee failed to properly and timely raise the Statute's protection in the answer and new matter to Appellants' complaint, *i.e.*, the first responsive pleading; and (2) Appellee participated in discovery by cross-examining the investigating police officer during his deposition.

> For a witness to be disqualified as a witness under the Dead Man's [Statute], the following [conditions] must be proven:
>
> > (1) the deceased must have had an interest in the matter at issue, *i.e.*, an interest in the immediate result of the suit; (2) the interest of the witness must be adverse; and (3) a right of the deceased must have passed to a party of record who represents the deceased's interest.

*Pagnotti v. Old Forge Bank*, 631 A.2d 1045, 1046 (Pa.Super. 1993) (quotation omitted).

In the case *sub judice*, it is undisputed that Appellee has met these three conditions as to Appellants. However, as Appellants correctly argue,

while the Dead Man's Statute exists for the protection of the deceased's estate, the protection afforded thereunder may be waived in certain circumstances by the representative of the decedent's estate. However, for the following reasons, we disagree with Appellants that waiver of the Statute applies in the instant case.

With regard to the first waiver argument advanced by Appellants, namely, that Appellee failed to properly and timely raise the Statute's protection in the answer to Appellants' complaint, *i.e.*, the first responsive pleading, Appellants rely primarily upon **Hughes v. Bailey**, 195 A.2d 281 (Pa.Super. 1963) (*en banc*). In rejecting Appellants' claim, the trial court provided the following reasons:

> First, [Appellants] argued that [Appellee] waived the protections of the Dead Man's [Statute] by failing to timely raise the protections of the [Statute] and instead waiting until they filed a Motion for Summary Judgment to raise the issue.
>
> [Appellants] cite **Hughes**[, **supra**], for the proposition that there exists some rule in Pennsylvania that the "first responsive pleading" in a case must raise the Dead Man's [Statute] or the protections of the [Statute] are waived. There exists no such rule in Pennsylvania, and the case cited by [Appellants] does not stand for this idea.
>
> In **Hughes**, the plaintiff in the action testified at a hearing for a preliminary injunction, and was cross-examined by the defendant, who then sought to declare the plaintiff incompetent to testify. The [appellate court] in that case found that where a witness has been "examined and cross-examined at length" without a party's failure to object to the witness' competency, a court would not err in refusing to then strike the testimony after it is taken.
>
> In the instant case, no testimony (and, by extension, no cross-examination), has been taken from either [Appellant], and **Hughes** is therefore inapplicable. Nor does [the appellate court]

- 9 -

in ***Hughes*** create a rule under which the "first responsive pleading" must contain the objection. In fact, the [appellate court] in that case specifically would *not* have required this, stating only that the objection in that case should have been raised at, not after, the preliminary hearing. [***Id.*** at] 284.

Trial Court Opinion, filed 8/1/16, at 4 (emphasis in original).

We agree with the trial court's reasoning in this regard. This Court has not found, nor have Appellants cited, any binding Pennsylvania appellate court decision which has ruled that a wavier of the Dead Man's Statute exists in a situation where the competency of a party was not raised in the "first responsive pleading." Further, the case relied upon by Appellants does not support this proposition.

Additionally, we note that, intertwined with their first argument, Appellants suggest that the protections offered by the Dead Man's Statute must be raised as an affirmative defense in the answer as new matter pursuant to Pennsylvania Rule of Civil Procedure 1030. We disagree.

Rule 1030 provides that "all affirmative defenses...shall be pleaded in a responsive pleading under the heading 'New Matter.'" Pa.R.C.P. 1030(a).[5] However, the invocation of the protection based on the Dead Man's Statute is not an "affirmative defense."

_____

[5] This general rule regarding affirmative defenses does not apply to "defenses of assumption of the risk, comparative negligence and contributory negligence[.]" Pa.R.C.P. 1030(b).

Our Supreme Court has held that, by definition, an "affirmative defense" pertains to "a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's...claim, even if all the allegations in the complaint are true." *Reott v. Asia Trend, Inc.*, 618 Pa. 228, 240, 55 A.3d 1088, 1095 (2012) (quotation marks and quotation omitted). As indicated *supra*, the purpose behind the legislatively enacted Dead Man's Statute is that the decedent's representative is in no position to rebut the assertions presented by the adverse party, and thus, it would be unfair to permit a surviving adverse party to give testimony that is favorable to himself and unfavorable to the decedent's interest. *See Larkin*, *supra*. It is not a defense whereby the decedent's representative assumes the allegations in the adverse party's complaint are true. Accordingly, as a matter of law, Appellants have not proven waiver on this basis. *See Krauss*, *supra* (setting forth our standard of review).

With regard to the second waiver argument advanced by Appellants, namely, that Appellee waived the protection of the Dead Man's Statute by participating in discovery, we disagree.

Under certain circumstances, the representative of the estate may waive the disqualification of the adverse party via discovery. For instance, our Supreme Court has held:

> [W]hen a decedent before he died or a decedent's representative has required an adverse party to be deposed or to answer interrogatories, any objection based upon the Dead Man's

> [Statute] to the competency of such a party to testify at the trial
> is waived, even though the discovery is not offered in evidence.

*Schroeder v. Jaquiss*, 580 Pa. 381, 388, 861 A.2d 885, 889 (2004) (citations omitted). Moreover, this Court has found waiver where the decedent's representative introduced as evidence the adverse party's statement in the pretrial conference. *Flagship First Nat. Bank of Miami Beach v. Bloom*, 431 A.2d 1082 (Pa.Super. 1981). As this Court has noted, such forms of discovery are equivalent to placing the adverse party on the witness stand. *Perlis v. Kuhns*, 195 A.2d 156 (Pa.Super. 1963) (*en banc*). It would be unfair to "enable one party to search the conscience of his adversary, drag to light his private papers and other evidence, and then repudiate the result, if the experiment proved unsatisfactory." *Id.* at 159. Moreover, our Supreme Court has held that a representative may waive the disqualification of the adverse party by testifying on his or her own behalf as to facts occurring subsequent to the decedent's death. *Estate of Kofsky*, *supra*.

In the present case, however, as the trial court properly found, the aforementioned waiver exceptions do not apply. Appellants were neither deposed nor served with interrogatories. Further, Appellee did not testify as to facts occurring subsequent to the decedent's death.

Still, Appellants argue that Appellee "participated extensively in discovery," thus waiving the protections of the Dead Man's Statute. For instance, they note that Appellee participated in the deposition of

Philadelphia Police Officer Thomas O'Neill, who completed an investigation report in the subject case.[6]  In rejecting this argument, the trial court noted:

> [I]t is the participation in discovery of the surviving adverse party that results in waiver of the [Statute].  It is the act of taking a deposition, filing interrogatories, or taking some other action that essentially places the surviving adverse party on the witness stand that triggers waiver of the [Statute's protections]....
>
> Such a concern does not exist here....In fact, per [Appellants'] representation in their response to the Motion for Summary Judgment, the only potential witness that has been deposed in this case is Officer Thomas O'Neill, the police officer who wrote the investigation report following the accident. Officer O'Neill...is not a party to this case.  Nor does he have any interest in the outcome of this case; this means that he is not the kind of adverse party courts contemplate when they discuss waiver of the Dead Man's [Statute] through participation in discovery.

Trial Court Opinion, filed 8/1/16, at 6.

We agree with the trial court's sound rationale.  The waiver principle applicable to the Dead Man's Statute has been applied to "taking the deposition of or requiring answers to interrogatories from an *adverse party*[.]"  **Schroeder**, 580 Pa. at 890, 861 A.2d at 389 (citation omitted) (emphasis added).  Officer O'Neill is not an "adverse party."  Appellants have not persuaded us that Appellee engaged in the type of discovery which

_____

[6] The record reflects that Appellants conducted Officer O'Neill's deposition; however, Appellee cross-examined him.

- 13 -

results in waiver of the Dead Man's Statute.[7] Thus, the trial court properly ruled, as a matter of law, that Appellee did not waive the protection of the Dead Man's Statute, and accordingly, Appellants, as surviving adverse parties, are not competent to testify at trial regarding the circumstances surrounding the motor vehicle accident.[8]

In their next issue, Appellants allege that, assuming, *arguendo*, the trial court properly ruled Appellants were incompetent to testify at trial, the entry of summary judgment in favor of Appellee was improper since Appellants otherwise produced sufficient evidence such that a jury could return a verdict in their favor. **See Krauss**, **supra** (setting forth summary judgment standard of review). Specifically, Appellants allege the deposition testimony of Police Officer O'Neill, who is competent to testify at trial,

---

[7] The authority relied upon by Appellants, **Beck v. Beck**, 646 A.2d 589 (Pa.Super. 1994), is unavailing. **Beck** stands for the proposition that the Dead Man's Statue is not applicable where a claim is not asserted against the estate of a decedent but against a surviving joint obligor. Such facts are not akin to the situation at hand.

[8] Appellants further baldly suggest on appeal that Appellee waived the protection of the Dead Man's Statute by responding to Appellants' request for production of documents and sending a subpoena for the deposition of Andrew Smith (a potential eyewitness who failed to appear for the deposition). With regard to Appellee responding to Appellants' request for production of documents, this is not the type of discovery which waives Appellee's protection of the Dead Man's Statute. **See Schroeder**, **supra**. Further, as to Appellee serving a subpoena upon Mr. Smith, we dispose of this issue simply by noting that Mr. Smith, similar to Officer O'Neill, is not an adverse party.

sufficiently established the decedent's breach of his duty to keep an assured

clear distance ahead, thus establishing a *prima facie* case of negligence.[9]

Initially, we agree with Appellants that there are limits to the Dead

Man's Statute and, while Appellants' testimony would be barred by the

Statute in this case, "[A]ppellants [are] free to present *other* evidence of

fault in support of their claims." **Weschler v. Carroll**, 578 A.2d 13, 17

(Pa.Super. 1990) (italics in original) (citations omitted).  Here, Appellants'

civil claim is grounded in negligence.  In any case alleging negligence, a

claimant must establish the presence of a legal duty or obligation; a breach

_____

[9] Appellants also baldly asserts:
> Furthermore, another independent witness, Andrew Smith, was found to have witnessed this incident. Though Mr. Smith failed to appear for a discovery deposition, his testimony as to how this incident occurred, would not have been precluded by the [D]ead [M]an's [Statute], and [ ] would have established a genuine issue of fact with regard to how this incident occurred.

Appellants' Brief at 13.  We find this assertion to be unavailing.  Appellants have not proffered any facts to which Mr. Smith would testify, and without some indication of the substance of Mr. Smith's testimony, Appellants have not met their burden.

Further, Appellants suggest that the deceased made recorded statements to his insurance company which "are sufficient to establish a genuine issue of material fact as to how th[e] collision occurred[.]" Appellants' Brief at 14.  However, Appellants failed to raise this issue in their answer in opposition to Appellee's motion for summary judgment and have sought to present it for the first time on appeal.  Consequently, this issue is waived.  **Lineberger v.  Wyeth**, 894 A.2d 141, 147 (Pa.Super. 2006) ("[A]rguments not raised initially before the trial court in opposition to summary judgment cannot be raised for the first time on appeal.") (citation and quotation omitted).

of that duty; a causal link between that breach and the injury alleged; and actual damage or loss suffered by the claimant as a consequence of thereof. *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa.Super. 2005).

It is well-settled that drivers owe each other a duty to drive carefully, and the "assured clear distance rule," based upon 75 Pa.C.S.A. § 3361, requires a driver to be able to stop safely within the distance the driver can clearly see. *Levey v. DeNardo*, 555 Pa. 514, 518, 725 A.2d 733, 735 (1999) ("[T]he assured clear distance ahead rule...requires a driver to control the speed of his or her vehicle so that he or she will be able to stop within the distance of whatever may reasonably be expected to be within the driver's path.") (italics omitted); *Phillips v. Lock*, 86 A.3d 906 (Pa.Super. 2014) (suggesting the rule is applicable to situations where a driver is alleged to have been following too closely, commonly referred to as tailgating).

The "key issue" in this case is whether Appellants adduced sufficient evidence to establish the decedent breached his duty to Appellants under the "assured clear distance rule," thus establishing a *prima facie* case for negligence.[10] The trial court found that Appellants failed to meet their

---

[10] We note that, if Appellants set forth *prima facie* evidence that decedent breached his duty to Appellants, then a *prima facie* case for the element of
*(Footnote Continued Next Page)*

- 16 -

burden in this regard, and consequently, granted summary judgment in favor of Appellee. More specifically, the trial court concluded Officer O'Neill's testimony did not create a genuine issue of material fact or establish a *prima facie* case for negligence against the decedent, *i.e.*, that the decedent breached his duty of care towards Appellants. **See** Trial Court Opinion, filed 8/1/16, at 7. We agree.

In his deposition, Officer O'Neill testified upon direct-examination by Appellants' counsel that, although he investigates traffic accidents as part of his patrol duties, he is not trained in accident reconstruction. **See** Police Officer Thomas O'Neill's deposition, dated 3/29/16, at 7-8. He indicated that, over the course of his career, he has responded to approximately 24,000 motor vehicle accidents, which is approximately one thousand per year. **Id.** at 6-7. Officer O'Neill testified that the accident at issue occurred outside his district, and it is unlikely that he responded to the accident scene. **Id.** at 12-13. In any event, he testified that he has no independent recollection of the accident at issue. **Id.** at 9.

Officer O'Neill admitted that, on the day after the accident, he completed an investigation report. **Id.** However, he testified he has no

*(Footnote Continued)* _____

causation would plainly be established in this case as well. **See Wright v. Eastman**, 63 A.3d 281 (Pa.Super. 2013).

independent recollection of preparing the report, and it is "most likely" that the report was prepared based on information given to him from Mr. Davis. *Id.* at 12. He noted his report contained neither a narrative nor a diagram, and the report failed to indicate the location where the information for the report was taken. *Id.* at 10. He surmised that he spoke to Mr. Davis either at his home or at the police district window; however, he testified he has no independent recollection of speaking to Mr. Davis. *Id.* at 10-11, 14. He noted that he took no other written notes or generated any other documents regarding the accident. *Id.* 14-15, 19.

With regard to the contents of his written report, Officer O'Neill noted that he had "Operator 1" listed as the deceased and "Operator 2" listed as Mr. Davis. *Id.* at 13. When asked how he arrived at the operator designations, Officer O'Neill testified "[i]t's customary that the vehicle that has the front end damage is considered the striking vehicle, therefore, he would be Operator 1. Operator 2 would be the receiving vehicle of being struck." *Id.* at 14. As to how he determined that there was front end damage to the left side of Operator 1's (the deceased's) vehicle, and rear right corner damage to Operator 2's (Mr. Davis') vehicle, Officer O'Neill testified that he obtained the information from Operator 2 (Mr. Davis). *Id.* at 15-16.

Officer O'Neill testified that he did not take any photographs of either vehicle, and he does not recall whether Mr. Davis showed him any

photographs of the vehicles. *Id.* at 16. He noted that neither operator was cited for any motor vehicle violations in connection with the accident. *Id.* Further, Officer O'Neill testified as follows on direct-examination:

> **Q.** Is it your understanding from your review of this report and based on your investigation into this matter that [the deceased] caused the accident?
>
> **A.** It only indicates from my perspective to be nonjudgmental in this situation. If I'm not presently at that accident, if I have no witnesses to state concretely what actually occurred as an independent witness, I can only surmise from where the damage area is who would have been the striking vehicle.
>
> However, I do not in my personal estimation consider that the ["]at fault["] vehicle. It's simply an indication as Vehicle 1 has front end damage, Vehicle 2 has rear end damage. How that accident occurred is frankly supposition on my part.
>
> And as I advised, operators are, from my own personal experience, when you call your insurance company notate where you were, what your geography was, what the street signs were, traffic lights were, direction you were traveling, what you were doing prior, during and after the accident. They take your statement as credible and more credible over what is considered recorded by the City of Philadelphia. I found that from my own personal experience.

*Id.* at 17-18.

Officer O'Neill noted that Ms. Gibson was listed on the report as a passenger; however, he has no recollection of speaking to Ms. Gibson and believes Mr. Davis provided him with her name. *Id.* at 18. He noted that Andrew Smith was listed on the report as a witness; however, he has no recollection of having any conversations with him. *Id.* at 19.

On cross-examination, Officer O'Neill reiterated that Mr. Davis was "most likely" the person who provided him with the information about the

accident; however, he has no independent recollection of interviewing Mr. Davis or the decedent. *Id.* at 20-21. Officer O'Neill testified that he left the report's "narrative blank because it could be seen by either party as being one-sided from our perspective, that we are taking one side over another because we have a narrative from one person." *Id.* at 23. Officer O'Neill testified that, with regard to the instant accident, he would not view himself as an investigator, but as a "[r]ecorder of information." *Id.* at 25.

Based on the aforementioned, and viewing the evidence in the light most favorable to Appellants (the nonmoving parties), we agree with the trial court that Officer O'Neill's deposition testimony neither created a genuine issue of material fact nor sufficiently established facts suggesting the decedent violated any duty of care, particularly his duty under the "assured clear distance ahead rule."

For example, Officer O'Neill testified that he did not recall responding to the accident scene, viewing any photographs of the subject vehicles, speaking to the parties, or speaking to any witnesses regarding the accident. While he admitted he prepared an investigation report "most likely" from information provided to him from Mr. Davis, he testified he had no independent recollection of preparing the report. Moreover, when asked if his report and investigation revealed whether the decedent caused the accident, Officer O'Neill specifically testified that it was his perspective to "be nonjudgmental in this situation[,]" he could only "surmise" what had

happened, and how the accident occurred is "supposition on [his] part." *See id.* at 17-18.

"[S]uch statements do not present competent evidence for the jury because [they are] speculative. A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor." *Krauss*, 104 A.3d at 568 (citations omitted). In fact, "the trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Farnese v. Se. Pennsylvania Transp. Auth.*, 487 A.2d 887, 890 (Pa.Super. 1985). A party is not entitled to an inference of fact that amounts merely to a guess or conjecture. *Flaherty v. Pennsylvania Railroad Co.*, 426 Pa. 83, 231 A.2d 179, 180 (1967).

Moreover, as it pertains to Officer O'Neill's investigation report, we note that, while Pennsylvania Rule of Evidence 612(a) provides that a witness "may use a writing...to refresh memory for the purpose of testifying while testifying, or before testifying[,]" there is no indication the investigation report refreshed Officer O'Neill's recollection in any respect. Further, the report itself, which Officer O'Neill testified was "most likely" prepared based on information provided by Mr. Davis, would be inadmissible

at trial pursuant to Section 3751 of the Motor Vehicle Code.[11] **See** 75 Pa.C.S.A. § 3751(b)(4) (indicating police reports "shall not be admissible as evidence in any action for damages...arising out of a motor vehicle accident."); **Phillips**, **supra** (holding a report prepared by a police officer who is not a witness to the accident is inadmissible hearsay evidence and should not be admitted into evidence in an action for damages).

Based on the aforementioned, we conclude Appellants' own testimony would be barred under the Dead Man's Statute, and they have not set forth other competent evidence of fault in support of their negligence claims. Accordingly, the trial court properly determined there were no genuine issues of material fact, Appellants failed to produce evidence to establish a *prima facie* case of negligence, and Appellee was entitled to the entry of summary judgment as a matter of law. **See** Pa.R.C.P. 1035. Accordingly, we affirm.

Affirmed.

_____

[11] Moreover, inasmuch as Officer O'Neill's report was entirely comprised of information "most likely" provided to him by Mr. Davis (a surviving adverse party), permitting Appellants to rely upon the report in order to avoid summary judgment would, in at least an indirect manner, deprive Appellee of the protections under the Dead Man's Statute.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/27/2017