**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| EAST BROADTOP CONNECTING RAILROAD, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ANDARKO PETROLEUM CORPORATION, INC. | |
| Appellee | No. 1124 MDA 2020 |

Appeal from the Order Entered July 21, 2020
In the Court of Common Pleas of Centre County
Civil Division at No: 2017-3105

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                **FILED: OCTOBER 29, 2021**

Appellant, East Broadtop Connecting Railroad, Inc., appeals from the trial court's July 21, 2020 order entering summary judgment in favor of Appellee, Andarko Petroleum Corporation ("Andarko"). We affirm.

The trial court found the following facts:

This matter originates from [Andarko's] decision in 2015 to establish a rail project in Pennsylvania in order to ship wastewater used in hydraulic fracturing ("fracking") to treatment facilities in Ohio, and subsequently return the water for reuse via the same method. Sam Mannino Enterprises ("SME") owned approximately thirty (30) tanker rail cars and sought to lease these tankers to [Andarko]. SME's contact with [Andarko] was Chad Bruinooge, and the two parties conducted preliminary negotiations over e-mail and phone beginning in spring of 2015. In the first correspondence between SME and Bruinooge in April, 2015, Bruinooge explained to SME that rail leases are 'very difficult to

_____

[*] Former Justice specially assigned to the Superior Court.

sell to upper management' and that [Andarko] 'may not make a deal.' In a September 3, 2015, email, Bruinooge writes '… let's discuss the possibility of reaching a potential deal ... we are very close to presenting this option to upper management ….' In an email to SME dated October 5th , 2015, Bruinooge states 'I have received the go ahead to move forward setting up our rail program …' and that Bruinooge needed a formal proposal from SME. SME responded by stating it would provide a proposal as soon as possible, and offered to let Bruinooge inspect the rail cars. SME sent an abbreviated term sheet to Bruinooge, which SME later conceded in this litigation did not contain detail sufficient to make it a formal lease. SME corresponded with Andarko's local representative, Abbie Allison, who instructed SME that it needed to execute a Master Services Agreement ("MSA"), as all entities doing business with Andarko were required to do, before proceeding with the lease agreement. On October 19th, 2015, SME had an email exchange with Ms. Allison about the prospect of becoming an approved vendor in Andarko's system, and that SME knew becoming an approved vendor was an issue separate and apart from the lease agreement.

On October 20th, 2015, Bruinooge traveled to Altoona to inspect the rail cars with Sam Mannino and Larry Salone ("Salone"), [Appellant's] principal, during which Bruinooge allegedly stated to Salone that he would take the rail cars. [Appellant] operates a 'switching railroad' in Mt. Union, Pennsylvania. Salone testified at his deposition that he was not partners with Sam Mannino, and that he did not know any details regarding the potential deal between SME and [Andarko] prior to being contacted by Sam Mannino to meet at the Rose Yard in Altoona so [Andarko] could inspect SME's rail cars. During the inspection, Salone allegedly asked Bruinooge what they were doing and how things were going, and Bruinooge allegedly replied 'I'll take them.' Salone allegedly replied 'so I am assuming they are coming to me then,' and Bruinooge allegedly replied 'yep.' No conversations about when Bruinooge would take the rail cars took place, nor did he state when the cars would be transported to [Appellant]. Salone stated in his deposition testimony that he was responsible for having the rail cars shipped to Mt. Union, and that neither SME, Bruinooge, nor [Andarko] ever requested that the rail cars be moved.

On January 14, 2016, Bruinooge responded to an email from SME stating that corporate management was uncomfortable with

the negotiation positions taken by SME, and that the commercial team would further evaluate SME before executing any lease contract. On March 8th, 2016, Bruinooge informed SME in an email that [Andarko] would not be engaging in business with SME at the present time, effectively ending all negotiations.

On January 28th, 2016, [Appellant] told Bruinooge that the rail cars had been moved to the outbound track, despite not being instructed to do so by either Bruinooge or [Andarko]. On March 8th, 2016, [Appellant] received an email from Bruinooge informing [Appellant] that negotiations with SME had broken down and that no lease would be forthcoming. The next contact between [Appellant] and [Andarko] occurred on March 25th, 2016, when [Appellant] submitted an invoice to [Andarko] for $60,030.00 as payment to [Appellant] for the tariff rates related to moving and storing the rail cars, which [Andarko] declined to pay, and the present suit followed.

Trial Court Opinion, 7/17/20, at 2-4 (record citations omitted).

Appellant commenced this action in Clearfield County on July 18, 2016. On April 4, 2017, Andarko moved to change venue to Centre County. The Clearfield County trial court granted the motion on August 15, 2017. On November 13, 2017, Andarko moved to consolidate this action with Centre County docket number 4245 of 2016 (the appeal from which we dispose of in a companion memorandum at 1123 MDA 2020). The trial court granted that motion on November 15, 2017. The parties proceeded through discovery, and Andarko moved for summary judgment on February 14, 2020. The trial court granted the motion on July 17, 2020. This timely appeal followed.

Appellant raises three issues:

I.   Did the trial court err in finding that there was no issue of material fact as to whether Chad Bruinooge had authority to bind or obligate [Andarko] or whether [Appellant] acted

- 3 -

>    reasonably upon relying upon Chad Bruinooge's authority to obligate or bind [Andarko] to a contract with [Appellant]?
>
> II.    Did the court err in finding that there was no genuine issue of material fact as to whether [Appellant] reasonably relied upon a promise made by [Andarko]?
>
> III.   Did the court err in granting [Andarko's] motion for summary judgment when it did not view presented facts in a light most favorable to [Appellant]?

Appellant's Brief at 9.

Appellant's assertions of error challenge the trial court's entry of summary judgment. Rule 1035.2 of the Pennsylvania Rules of Civil Procedure authorizes a motion for summary judgment "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report." Pa.R.C.P. No. 1035.2.[1]

> When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment "where the right to such judgment is clear and free from all doubt. On appellate review, then,
>
>> an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our

---

[1] Appellant did not respond to the motion. The trial court disposed of Andarko's motion on the merits rather than enter summary judgment under Rule 1035.3(d) ("Summary judgment may be entered against a party who does not respond.").

- 4 -

> standard of review is *de novo.* This means we need not defer to the determinations made by the lower tribunals.

> To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010) (internal citations and quotation marks omitted). An issue of fact is material where its resolution could affect the outcome of the case. ***Pielago v. Orwig***, 151 A.3d 608, 610 (Pa. Super. 2016). The trial court should not permit an issue to go to the jury if the verdict would require "conjecture, surmise, guess or speculation." ***Davis v. Wright***, 156 A.3d 1261, 1273 (Pa. Super. 2017). "A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor." ***Id.***

In its first argument, Appellant claims there is a material issue of fact as to Bruinooge's apparent authority to bind Andarko to his promises.

> An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. […] Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. […].

> The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking. The creation of an agency relationship requires no special formalities. The existence of an agency relationship is a question of fact. The party asserting the existence of an agency relationship bears the burden of proving it by a fair preponderance of the evidence. In establishing agency, one need not furnish direct proof of specific authority,

provided it can be inferred from the facts that at least an implied intention to create the relationship of principal and agent existed.

[…]

Where an agent exceeds his authority, and this is known or should be known by the principal, an agency may be created by apparent authority as to such acts; but in such instances the relation of the principal and agent is already established for some purposes.

*V-Tech Servs., Inc. v. St.*, 72 A.3d 270, 278–79 (Pa. Super. 2013). The burden of establishing agency rests on the party asserting it. *Basile v. H&R Block*, 761 A.2d 1115, 1120 (Pa. 2000). "Although a third party cannot rely on the apparent authority of an agent to bind a principal if he has knowledge of the limits of the agent's authority, without such actual knowledge, the third party must exercise only reasonable diligence to ascertain the agent's authority." *Bolus v. United Penn Bank*, 525 A.2d 1215, 1222 (Pa. Super. 1987). Further, "a third party can rely on the apparent authority of an agent only when this is a reasonable interpretation of the manifestations of the principal."

Appellant argues that it has a viable cause of action for promissory estoppel based on Bruinooge's statements.

The doctrine of promissory estoppel permits a claimant to enforce a promise in the absence of consideration. To maintain a promissory estoppel action a claimant must aver the following elements: (1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.

***Sullivan v. Chartwell Inv. Partners, LP***, 873 A.2d 710, 717–18 (Pa. Super. 2005); ***see also***, Restatement (Second) of Contracts, § 90.

The record reflects that the only meeting between Salone, Appellant's principal, and Bruinooge, occurred at the October 20, 2015 meeting where Bruinooge allegedly said, "I'll take them," referencing the tankers to be leased from SME. Salone understood that Andarko and SME were exploring a lease or SME's railcars, and Salone said he was there to answer questions about whether the railcars would meet Andarko's needs. Andarko's Motion for Summary Judgment, 2/14/20, at Appendix p. 966. There is no evidence that Salone dealt with anyone from Andarko other than Bruinooge. Salone admitted in his deposition that on one from Andarko ever told him that Bruinooge had authority to bind Andarko. ***Id.*** at Appendix p. 999. Salone's statements indicate either that he directed SME's tanker cars to be delivered to Appellant's railyard, or that some other party directed the movement of the tankers and that he approved the decision to receive them at Appellant's premises. ***Id.*** at Appendix p. 984-85.[2] There is no evidence that the movement of SME's tanker cars to Appellant's yard was done at the request or direction of Bruinooge or any other Andarko personnel. In a subsequent letter, dated March 25, 2016, Salone wrote that he took the cars to inspect

---

[2] In this respect, our reading of the record differs from that of the trial court. As quoted above, the trial court found that Salone stated unequivocally that he was responsible for having the railcars moved to Appellant's railyard. This discrepancy does not affect the outcome of this appeal.

and repair them, and make sure they were safe for use. *Id.* at Appendix p. 1060.

Other correspondence between Salone and Bruinooge further evidences Salone's understanding that (1) Bruinooge did not have decision making authority for the pending lease agreement between Andarko and Sam Mannino Enterprises ("SME"), and (2) that Andarko and SME had yet to come to terms on a deal. In an exchange of emails on January 28, 2016, Salone wrote to Bruinooge explaining that he had the tanker cars moved to his outbound track. *Id.* at Appendix p. 1137. Bruinooge wrote back stating, "Things are still in our houston's teams [sic] shop and we are pending a management meeting on a final decision based on findings." *Id.* Salone responded, "I know leases sometimes take a while, so just keep me posted on when we are ready to go." *Id.*

To summarize, Salone admitted that no one from Andarko represented to him that Bruinooge had authority to make binding promises on its behalf. Email correspondence between Salone and Bruinooge documents Salone's knowledge that the lease negotiations were in the hands of Andarko's Houston team, and Salone's acknowledgement that leases take a long time. Appellant has come forward with no evidence to establish its diligence in discerning the extent of Bruinooge's authority. Rather, the record establishes that Appellant, by and through Salone, was aware throughout its relationship with Andarko that Andarko's use of the tanker railcars depended upon the execution of a

lease agreement with SME. In other words, Appellant's assertion of Bruinooge's agency rests on speculation, surmise, and conjecture rather than evidence. As explained above, the trial court should not permit a cause of action based on speculation to go to the jury. We discern no error in the trial court's decision that no genuine issue of material fact exists as to Bruinooge's agency.

Further, given the lack of evidence of Bruinooge's apparent authority to bind Andarko, we further conclude there is no genuine issue of material fact as to whether Andarko made a promise that it should have reasonably expected to induce action or forbearance on the part of Appellant. Appellant and Andarko were not negotiating partners and, at the meeting where Bruinooge allegedly said he would take the tanker cars, Salone was present at the request of Mannino to answer Bruinooge's questions. Thus, the record lacks evidence to support a triable issue of fact as to the first element of a promissory estoppel claim.

In addition, because the record is not clear on who directed or requested SME's railcars to go Appellant's railyard, Appellant's allegation that it acted in reliance on a promise from Andarko rests on speculation and conjecture rather

than evidence. As we have already explained, a cause of action based on speculation cannot survive summary judgment.[3]

Appellant's final assertion of error is that the trial court failed to analyze the record in the light most favorable to Appellant, as the nonmoving party. For the reasons we have explained in addressing Appellant's first two arguments, we discern no error in the trial court's treatment of the record.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/29/2021

---

[3] Given our analysis and conclusion in the main text, we do not address the parties' competing arguments that Bruinooge's alleged statements were inadmissible hearsay or admissible for their effect on the listener.