J-A29037-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| C.J.K., A MINOR, BY AND THROUGH HIS PARENTS AND NATURAL GUARDIANS, MELISSA HUDAK AND FRANK KICHAK, AND MELISSA HUDAK AND FRANK KICHAK, INDIVIDUALLY | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| | : | No. 763 WDA 2025 |
| v. | : : : | |
| JAMES P. THOMAS AND MARY ANN THOMAS | : : | |

Appeal from the Order Entered June 3, 2025
In the Court of Common Pleas of Mercer County
Civil Division at No. 2023-03162

BEFORE:  OLSON, J., DUBOW, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:               **FILED: March 17, 2026**

In this negligence case, C.J.K., a minor, by and through his parents and natural guardians, Melissa Hudak and Frank Kichak, and Melissa Hudak and Frank Kichak, individually (collectively, Appellants), appeal from the order granting summary judgment in favor of their former landlords, James P. Thomas and Mary Ann Thomas (the Thomases), and dismissing Appellants' complaint.  We affirm.

*Case History*

The trial court summarized the underlying facts as follows:

On September 7, 2022, the Minor-Plaintiff, [C.J.K.], who was under two years old at the time of the incident alleged herein, was

present at … an apartment which had recently been rented by his parents…. The apartment was located on the second floor of the building and had two stairways providing access. One of these stairways was covered by a sliding plastic partition or accordion-style door. At some point while in the apartment, C.J.K. moved away from his parents, who were occupied at the time. Shortly after, a noise was heard, followed by crying, and C.J.K. was found at the bottom of a stairway. It is alleged C.J.K. fell down the stairs, which consisted of seventeen steps, and landed on a tile surface.

C.J.K. sustained injuries, including bruising and bleeding on his head. C.J.K. was taken to Sharon Hospital, where a CT scan was performed. Due to concerns about a possible fracture or brain bleed, C.J.K. was airlifted to Akron Children's Hospital. C.J.K. was admitted overnight for observation and discharged the following day. His parents were given instructions to monitor for further symptoms but did not report any subsequent medical visits related to the incident.

Trial Court Opinion (TCO), 8/8/25, at 1-2 (unnumbered).

On September 28, 2023, Appellants filed a complaint alleging that C.J.K. fell as a result of the Thomases' negligence. They alleged, *inter alia*, that the Thomases were negligent "in failing to properly inspect, maintain, or secure the sliding partition door," and "permitting a dangerous condition to remain on the premises and for failing to warn [Appellants] of said dangerous condition."[1] TCO at 2.

---

[1] Appellants originally filed their complaint in Lawrence County. The Thomases raised preliminary objections to venue based on both parties residing in Mercer County, the "incident giving rise to the cause of action" occurring in Mercer County, and Appellants "fail[ing] to allege any basis for venue in Lawrence County." Preliminary Objections, 10/6/23, at ¶¶ 1, 3. On November 8, 2023, the Lawrence County Court of Common Pleas sustained the preliminary objections and transferred the case to Mercer County.

On December 19, 2023, the Thomases filed an answer, new matter, and crossclaim. The parties continued to file pleadings and engage in discovery. After the completion of discovery, the Thomases filed a motion for summary judgment. The Thomases argued that Appellants failed to produce sufficient evidence to demonstrate a duty owed or an injury resulting from any alleged breach of duty. They specifically averred that they were landlords out of possession, and as such, had no duty to protect C.J.K. Motion for Summary Judgment, 2/4/25, at ¶ 5. The Thomases also averred that "medical records do not support [Appellants'] unsubstantiated allegations of brain injury to [C.J.K.,]" and that Appellants "produced no expert report supporting the allegation of a 'brain bleed' or brain damage resulting from this fall." *Id.* at ¶¶ 8-9. Appellants filed a response denying these averments. *See* Response in Opposition to Motion for Summary Judgment, 3/4/25, at ¶¶ 5, 8-9. The trial court heard oral argument on June 2, 2025. On June 3, 2025, the trial court entered an order and opinion granting the Thomases' motion for summary judgment and dismissing Appellants' complaint. Appellants filed a timely appeal on June 20, 2025. On July 10, 2025, they filed a court-ordered concise statement of errors pursuant to Pa.R.A.P. 1925(b). Appellants raise the following question for review:

> Whether the trial court erred in granting summary [judgment] when it ruled as a matter of law that there were no facts of record to state a prima facia [*sic*] case of negligence, causation and damages?

Appellants' Brief at 2.

- 3 -

*Discussion*

In considering the trial court's order granting summary judgment,

[w]e view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Siciliano v. Mueller*, 149 A.3d 863, 864 (Pa. Super. 2016) (citation omitted).

The record subject to review is explicitly limited to (1) pleadings; (2) depositions, admissions, responses to interrogatories, affidavits; and (3) reports signed by expert witnesses that comply with the rules of discovery. *Finder v. Crawford*, 167 A.3d 40, 44 (Pa. Super. 2017) (citing Pa.R.Civ.P. 1035.1). Our review of the record in this case reveals no error or abuse of discretion.

I. *Waiver*

First, we agree with the trial court's conclusion that Appellants' claims are "waived for failure to comply with the mandates of Rule 1925(b)." TCO at 6. In determining "whether an appellant has waived their issues based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation." *Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) (citations omitted). Here, the trial court "cautioned that any issue not properly included

in the statement timely filed and served pursuant to Pa.R.A.P. 1925(b) shall be deemed waived." Order, 6/23/25. Appellants' concise statement, in entirety, reads:

1. The matters complained of by Appellants on appeal are as follows:

   a. The [t]rial [c]ourt erred in granting [the Thomases'] Motion for Summary Judgment when it ruled as a matter of law that there were no facts of record to state a prima facia [*sic*] case of negligence, causation, and damages.

Concise Statement of Errors Complained of on Appeal, 7/10/25.

As the trial court observes, Appellants' concise statement is "broad and conclusory," "suffers from a lack of the requisite specificity required by Pa.R.A.P. 1925(b)," and "fails to direct the [trial c]ourt to any particular place in the record, identify any material factual dispute, or specify the precise legal error purportedly committed." TCO at 5. This Court has held that a concise statement "which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all." ***Lineberger v. Wyeth***, 894 A.2d 141, 148 (Pa. Super. 2006) (citation omitted). In ***Lineberger***, the appellant challenged the grant of summary judgment, but filed a concise statement which "announced a very general proposition; namely, that the trial court erred when it granted [the defendant's] summary judgment motion," and "did not reiterate the arguments the appellant raised in opposition to summary judgment." ***Id.*** at 148-49. The trial court in ***Lineberger*** suggested that the appellant failed to preserve any issue for appellate review and this Court agreed. ***Id.*** at 149.

- 5 -

Similarly, and consistent with *Lineberger*, we find that Appellants failed to preserve their appellate claims. However, in the absence of waiver, the claims would not merit relief.

II. *Negligence*

Under Pennsylvania law, the "mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence." *Toro v. Fitness Int'l LLC*, 150 A.3d 968, 976 (Pa. Super. 2016) (citation omitted). To establish negligence, a plaintiff must prove: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *Id.* at 976–77. "It is a fundamental principle of tort law that there cannot be a valid claim sounding in negligence unless there is a duty upon the defendant in favor of the plaintiff which has been breached." *Straw v. Fair*, 187 A.3d 966, 983 (Pa. Super. 2018) (citation omitted). "The existence of a duty is a question of law for the court to decide." *Id.* (citation omitted).

The Thomases have maintained they owed no duty to Appellants because they were landlords out of possession. *See* Motion for Summary Judgment at 1; Thomases' Brief at 6-8. The general rule in Pennsylvania is that a landlord out of possession is not responsible for injuries suffered on the leased premises. *See Bleam v. Gateway Pro. Ctr. Assocs.*, 636 A.2d 172, 174 (Pa. Super. 1993). The Pennsylvania Supreme Court recently explained:

> Liability is predicated on possession and control of the premises, as opposed to ownership, because the duty of care arises out of the possession and control of the premises. *See*

> ***Dinio v. Goshorn***, 437 Pa. 224, 270 A.2d 203, 206 (1969) ("[i]t is clear that a landlord out of possession is generally not liable for bodily harm sustained on his property by the lessee"); ***Jones v. Levin***, 940 A.2d 451, 454 (Pa. Super. 2007) ("liability is premised primarily on possession and control, and not merely [on] ownership.") (brackets in original) (quoting ***Deeter v. Dull Corp., Inc.***, 420 Pa. Super. 576, 617 A.2d 336, 339 (1992)).

***Simone v. Alam***, 333 A.3d 359, 368 (Pa. 2025).

Appellants disagree with the Thomases. **See** Response in Opposition to Motion for Summary Judgment, 3/4/25, at ¶ 5. They concede that "landlords out of possession generally have limited liability for injuries occurring on the premises," but claim exceptions where a landlord "retains control over certain areas, has knowledge of a dangerous condition, or if the lease imposes specific duties on the landlord." Appellants' Brief at 8. We have explained:

> A landlord out of possession may incur liability (1) if he has reserved control over a defective portion of the demised premises; (2) if the demised premises are so dangerously constructed that the premises are a nuisance *per se*; (3) if the lessor has knowledge of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee; (4) if the landlord leases the property for a purpose involving the admission of the public and he neglects to inspect for or repair dangerous conditions existing on the property before possession is transferred to the lessee; (5) if the lessor undertakes to repair the demised premises and negligently makes the repairs; or (6) if the lessor fails to make repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased premises.

***Dorsey v. Continental Associates***, 591 A.2d 716, 718-719 (Pa. Super. 1991) (citation omitted).

Appellants contend the Thomases reserved control of the apartment based on the lease provision which allowed Mr. Thomas to enter the premises to make repairs, and Mr. Thomas's deposition testimony that he provided maintenance at the apartment. Appellants' Brief at 10. However, Appellants' do not cite pertinent legal authority to support this claim. Appellants also assert, without citing pertinent evidence or legal authority, that Mr. Thomas knew the door was dangerous. *Id.* at 11 (Appellants arguing that because Mr. Thomas knew of the door's existence, he also knew it was dangerous).

The trial court did not make a finding as to whether the Thomases were landlords out of possession. After careful review of the record and existing case law, were we to reach this issue, we would be inclined to find, as a matter of law, that the Thomases were landlords out of possession. *See, e.g.,* Deposition Testimony of Melissa Hudak, 6/27/24, at 15-16 (Ms. Hudak stating she had leased "the whole second floor," and agreeing "that portion of the apartment building was [Appellants'] to use exclusively, and nobody else would be using that portion"); *see also Davis v. Wright*, 156 A.3d 1261, 1273 (Pa. Super. 2017) (holding that claim based on speculation cannot survive summary judgment, and "the trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation."). However, regardless of the Thomases' status as landlords — and whether they had a duty and breached that duty — the record is insufficient to establish causation. As the trial court stated, "assuming *arguendo* [Appellants] could establish a duty and

breach based on the interior accordion door, Appellants failed to produce evidence establishing the essential elements of causation and damages." TCO at 7. The court found Appellants failed to produce "evidence to support a causal link between the alleged condition of the door and C.J.K.'s fall," and "the connection between the alleged breach and the injury remains speculative and insufficient to survive summary judgment." *Id.* We agree.

"[P]roof of injury alone, without more, or of the existence of the negligent condition without showing that it caused the injury complained of, is insufficient to establish a case of liability." ***Harris v. Hutchinson Sportsmen's Club and South Union Township***, ___ A.3d ___, ___, 2026 PA Super 21, 2026 WL 292149, at *7 (Pa. Super. 2026) (quoting ***Sherk v. Daisy-Heddon, a Div. of Victor Comptometer Corp.***, 450 A.2d 615, 619 (Pa. 1982) (citations omitted)). In a factually similar case, this Court held that "the absence of a hand railing does not establish causation on its own." ***Jones v. Plumer***, 226 A.3d 1037, 1044 (Pa. Super. 2020), *appeal denied*, 237 A.3d 407 (Pa. 2020).

In ***Jones***, the plaintiff (Ms. Jones), fell down the stairs of the property she leased from her landlord. *Id.* at 1038. Ms. Jones claimed "she tripped on the premises' poorly maintained steps, which led down from a porch on the

side of the building[, and] had no railing." *Id.* Ms. Jones initiated a negligence action, and the defendant filed a motion for summary judgment.[2]

The landlord's duty and breach of duty in ***Jones*** was not disputed, but the defendant successfully "attacked Ms. Jones' lack of evidence of causation." *Id.* at 1039. Like this case, there was no eyewitness who could testify about the cause of the fall.[3] We rejected Ms. Jones' reliance on the absence of a railing to prove causation. We held that the "lack of a hand railing, even when its absence violates a building code[4], is not proof of causation." *Id.* at 1043 (citing ***Wisniewski v. Chestnut Hill Hospital***, 170 A.2d 595 (1961) (Supreme Court of Pennsylvania holding "the lack of a hand railing is not sufficient to prove fault on the part of the land owner without more")). We stated that "the absence of a hand railing does not establish causation on its own as Ms. Jones' brief implies." *Id.* at 1044. This Court affirmed the grant of summary judgment because Ms. Jones did not establish how she fell, but

---

[2] Because the landlord died before she filed suit, Ms. Jones sued the administratrix of the landlord's estate (the defendant). *Id.* at 1039.

[3] Ms. Jones was the only witness, and the Dead Man's Act prohibited her from testifying about the cause of her fall. *Id.* at 1041.

[4] Appellants' claim that the Thomases were negligent *per se* with respect to causation by failing to comply with Pennsylvania's Uniform Construction Code (UCC) would also be unavailing. **See** 34 Pa. Code § 50.24 (Exit doors and exit access doors) and 50.26 (Intercommunicating stairway); **see also** TCO at 8 (trial court stating that the UCC "is a regulatory framework designed to safeguard the public at large, not a narrowly defined class of individuals[, and] does not support a claim of negligence *per se*").

proved "only that she did," and a jury "would still need to guess why the fall occurred." ***Id.*** We concluded:

> [The fact] that the steps had no railing is legally insufficient to place the question of causation before the jury. The absence of a hand railing does not cause one to fall; its absence only makes it more difficult to catch oneself after the fall begins. Thus, we rejected Ms. Jones' theory of causation.

***Id.*** Here, we likewise reject Appellants' implication that the existence of the partition door was sufficient to prove that it caused C.J.K. to fall. ***See id.*** (stating that "the absence of a hand railing does not establish causation on its own").

In sum, we find that Appellants' claims are waived, and even if the claims were not waived, Appellants failed to established the requisite elements of negligence to survive summary judgment.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 03/17/2026

- 11 -